377 P.2d 386

**Ruby V. FORD, Administratrix of the Estate of James L. Ford, Deceased, Plaintiff-Appellant,**

**v.**

**Jackie Lee ETHERIDGE and Murvel Mac Hogge, Defendants-Appellees.**

No. 6955.

Supreme Court of New Mexico.

Dec. 14, 1962.

Rehearing Denied Jan. 17, 1963.

Lorenzo A. Chavez, Arturo G. Ortega, Melvin L. Robins, Albuquerque, for appellant.

K. Gill Shaffer, Paul L. Butt, James M. Durrett, Jr., Albuquerque, for appellees.

MOISE, Justice.

Plaintiff-administratrix appeals from a judgment denying recovery for the accidental death of her husband which occurred while he was riding in his own car, in a state of intoxication. The car was being driven by the defendant, Jackie Lee Etheridge. The trial court found that the decedent was contributorily negligent in that he became intoxicated and failed to keep a proper lookout, and accordingly denied recovery.

Early on April 25, 1959, Ford and Etheridge left on a fishing trip to Blue Water Lake. Both Ford and Etheridge began drinking, and by the time of their arrival at the lake, they each had drunk several cans of beer. After their arrival, Ford consumed a half-pint of whiskey. Midway in the morning, Ford sent Etheridge to Thoreau to obtain more whiskey. Shortly after Etheridge's return Ford became violently ill, and Etheridge and two other friends they had met at the lake, cared for him. Because of Ford's condition, it was decided to return him to Gallup. He was helped into the front seat of the car, and the return trip started with Etheridge driving.

The court found that although intoxicated, Ford knew that defendant was operating the car, assented to this operation, and was sufficiently aware of what was happening to have remained awake and to have maintained a lookout for the safe operation of the car.

Etheridge stopped the car at Thoreau and asked decedent if he wished to get a cup of coffee. The decedent shook his head and made a gesture which Etheridge interpreted as meaning he was to resume his journey.

A short time later, on a two-lane section of highway 66 leading to Gallup, Etheridge, while attempting to pass a car, encountered a car approaching, and to avoid a head-on collision drove the car off the left side of the road where it struck a ditch and overturned. Ford, who was either asleep or unconscious at the time, was thrown out and he never again regained consciousness. Some five months later he died of injuries received in the accident.

The trial court found Etheridge was negligent in the operation of the car, thus causing the injury and subsequent death of Ford.

The single issue presented by the appeal is whether the court erred in denying appellant recovery because of decedent's contributory negligence.

Appellee argues that this case involves nothing more than a substantial evidence question, and that because the trial court's findings are supported by substantial evidence, the finding of contributory negligence must be affirmed. Perini v. Perini, 64 N.M. 79, 324 P.2d 779. See also, Moore v. Armstrong, 67 N.M. 350, 355 P.2d 284.

There can be no question that under certain circumstances, a passenger riding in a car driven by another has a duty to exercise reasonable or ordinary care to avoid injury to himself; and that failure in that duty may result in a finding of contributory negligence. Perini v. Perini, supra; Silva v. Waldie, 42 N.M. 514, 82 P.2d 282. Where this negligence is a proximate contributing cause of the accident, the negligent party or his personal representative will be denied recovery. Perini v. Perini, supra; Moss v. Acuff, 57 N.M. 572, 260 P.2d 1108; Williams v. Haas, 52 N.M. 9, 189 P.2d 632.

It is fundamental law, however, that whether a duty arises from the facts in evidence is entirely a question of law to be determined by the court. Southern Union Gas Co. v. Briner Rust Proofing Co., 65 N. M. 32, 39, 331 P.2d 531. Prosser on Torts (2d Ed.) Ch. 7, § 39, p. 192. The critical issue, as we see it, is whether, under the facts as found by the trial court, a duty arose on the part of plaintiff's decedent to anticipate injury because of the driver's negligence and to take precautionary steps based upon this duty.

In those courts which have considered the question there can be no doubt, that in the absence of knowledge of the presence of danger or unsuitability of the driver, there is no duty for a passenger to keep a lookout for peril ahead.

In Sanders v. H. P. Welch Co., 92 N.H. 74, 26 A.2d 34, 38, a case involving facts similar to the present case, the court quoted the following from Mason v. Andrews, 86 N.H. 277, 279, 167 A. 156, 158:

"There is no rule of law requiring a passenger, in the absence of knowledge on his part of unsuitability in his driver, to keep a lookout for peril ahead. He is entitled to rely upon the assumption that his driver will act with due regard for his safety, in the absence of knowledge that such is not in fact the case."

Another case close to the instant one on its facts is Helms v. Leonard (W.D.Va. 1959), 170 F.Supp. 143, involving the owner of an automobile who, after drinking two bottles of beer, permitted his date to drive the car. The plaintiff-owner fell asleep and shortly thereafter, the defendant negligently ran into a stone wall. The following lan-

guage is quoted from the opinion of the court:

"There was nothing to forewarn the plaintiff that the defendant would be inattentive or careless about her duties as a driver. The fact that he was asleep bore no causal relation to the accident. There is not a scintilla of evidence in this case that Helms knew of any existing hazard, that he had any opportunity to avoid the actual hazard, or that he made any voluntary choice to incur the risk of such hazard. When he went to sleep he had every reason to believe that his car was under the control of a person whom he believed to be a competent driver, fully familiar with the car's operation."

See also, Sackett v. Haeckel, 249 Minn. 290, 81 N.W.2d 833, and Duffy v. Flynn, 72 Nev. 278, 302 P.2d 967.

Perini v. Perini, supra, follows the general rule stated in the above cases. That case involved three brothers who drove to Denver for a funeral. The owner-driver of the car had been cautioned by the other brothers about his driving. The brothers were all tired and had changed drivers several times because of their fatigue. While one of the members of the party was asleep, and another was tuning the radio, the owner turned the car over while attempting to pass a pickup. Under the factual conditions stated above, the court held the passengers had a duty to have observed the physical condition of the driver, his manner of driving, and that they should have taken precautionary steps in the interest of their own safety. In the words of this court in that case, "the appellants knew or should have known the dangers of their situation and had a duty to be on the lookout with the driver."

Appellee argues that the owner of a car who is also a passenger in the car has a greater duty to remain alert than a guest. The appellee cites the court to no cases which impose such a higher duty. He relies entirely upon the Restatement of Torts, § 495. We quote the following language from the section relied upon:

"A plaintiff is barred from recovery if the negligence of a third person is a legally contributing cause of his harm, and the plaintiff

"(a) has the ability to control the conduct of the third person, and

"(b) knows or has reason to know that he has such ability, and

"(c) knows or should know
"(i) that it is necessary to exercise his control, and

"(ii) that he has an opportunity to do so, and

"(d) fails to utilize such opportunity with reasonable care."

The following is quoted from the comments on Clause c (i) and c (ii):

"(c, i) In order to bar the plaintiff from recovery under the rule stated in this Section, it is necessary that the plaintiff know or should know that it is essential for his safety to control the conduct of the third person. * * *

"(c, ii) The plaintiff's ability to control the third person's conduct and the existence of circumstances which should lead him as a reasonable man to believe that his efforts to do so would be effective are prerequisites to the application of the rule stated in this Section. * * *"

█ It is apparent that the restatement rule is the same rule cited in the cases above, to the effect that before an owner-passenger can be held contributorily negligent he must know or have a duty to know that he is in danger.

Appellee cites Petrone v. Margolis, 20 N.J.Super. 180, 89 A.2d 476, as authority for the proposition that decedent, Ford's "voluntarily becoming intoxicated so that he was not aware of what was happening" was sufficient, by itself, to support a finding of contributory negligence. The court here concluded that in voluntarily becoming intoxicated, decedent was guilty of contributory negligence.

However, the rule announced in Petrone v. Margolis, supra, is simply that whereas recovery is denied because of contributory negligence by overindulgence to one who exposes himself to manifest danger and is injured, when by the exercise of ordinary care the injury would have been avoided, nevertheless, proof of intoxication alone is not sufficient to raise an inference of carelessness.

The case of Bailey v. Rhodes, 202 Ore. 511, 276 P.2d 713, also cited by appellee, holds only that intoxication is not an excuse for the failure to use reasonable care. No case that we can discover has gone so far as to say the act of becoming drunk or going to sleep, without more, convicts a passenger of contributory negligence. The correct rule is stated in Sackett v. Haeckel, supra, 249 Minn. at 297, 81 N.W.2d at 837:

"[A] passenger is not necessarily guilty of contributory negligence if he goes to sleep, but he may be found so if there were any circumstances which would indicate to a reasonable person the necessity to stay awake and remain alert for his own protection."

█ The uncontradicted testimony, including that of the defendant himself, is that Etheridge was a sober and capable driver. Etheridge had even driven to the lake on the way out when plaintiff's decedent was sober. The court in orally stating his findings and conclusions at the end of

the trial rejected the defense of assumption of risk by saying:

"I don't find any assumption of risk in this situation. I don't think there was any risk involved. There was no factual situation whereby it would have been or reasonable for the defendant to assume that he was undertaking a dangerous thing, by traveling with Etheridge. I reach this conclusion on the basis of Etheridge's condition. It was not established to my satisfaction that his faculties were impaired in any way."

Keeping in mind the foregoing comment by the court, together with its findings that decedent Ford "though intoxicated, did recognize that defendant was operating Ford's automobile, assented to his continued operation of the automobile, and was sufficiently aware of what was happening as to have remained awake and to have jointly maintained a lookout for the safe operation of the automobile" and that decedent Ford was negligent in failing "to maintain a proper lookout to aid the defendant in the control and operation of the car in which they were riding, which conduct contributed proximately to his injury," the court must have been applying to decedent, because he was not totally unconscious, a rule of absolute duty to keep a lookout. At the same time, the court found no facts which should have put decedent on notice that a careful lookout was required in keeping with due care for his safety. That this is true can be seen from the following statement of the court made at the close of the case:

"On the question of contributory negligence, however, I find that the decedent was contributorily negligent. For your information, where I find it is this: In his failure to maintain himself in a situation of reasonable alertness and to carry out his mutual or joint responsibility for the control of that vehicle. It was his car and this trip was also his undertaking. Had there never been any point or instance of consciousness or alertness at all on the defendant's part, and if he had been simply loaded in and hauled off, like you have in some of the ambulance cases, then, it might be different. Here, we had the driver stopping and the decedent asked about whether he wanted coffee with the decedent indicating he did not, and with them then going on. We have the driver stopping to see whether the decedent was going to be ill or not. Ford wasn't completely unconscious. He should have, and in my opinion, could have taken the necessary steps to have gotten himself straightened out before continuing on or before letting Mr. Etheridge continue on with that journey. I think that this failure on Ford's part contributed proximately to

the accident and his death, because of his failure to assist in the control of that vehicle by maintaining a proper lookout."

It is also evident in the court's conclusion that decedent was "contributorily negligent" in failing to stay alert, and in failing to keep a proper lookout and in failing to exert the proper control over his own automobile.

The instant case differs materially from Perini v. Perini, supra, in that under the facts there present the passengers knew or should have known the dangers of their situation and had a duty to keep a lookout. Here no facts giving rise to such a duty were found. Consequently, in applying a rule that, in effect, any person who is a passenger in a car and conscious is guilty of contributory negligence if he fails to keep a careful and constant lookout so as to assist or control a driver who has given no hint of negligence, inability to carefully drive the car, or impending danger, the court fell into error.

It follows from what has been said that the judgment appealed from should be reversed, and the cause remanded to the district court with instructions to set aside its judgment and to proceed to determine appellant's damages and enter judgment accordingly.

It is so ordered.

CARMODY and NOBLE, JJ., concur.