473 P.2d 373

**Holmes PADDOCK, Administrator of the Estate of Minnie Paddock, Deceased, Plaintiff-Appellant,**

**v.**

**John SCHUELKE, Personal Representative of John M. Dusman, Deceased, Defendant-Appellee.**

**No. 475.**

Court of Appeals of New Mexico.

July 31, 1970.

James E. Thomson, Zinn & Donnell, Santa Fe, for appellant.

Irving E. Moore, Toulouse, Moore & Walters, Albuquerque, for appellee.

## OPINION

WOOD, Judge.

Plaintiff appeals from a jury verdict in favor of defendant in this automobile accident case. There are two issues: (1) evidence of contributory negligence, and (2) whether the trial court should have directed a verdict in favor of plaintiff on the issue of defendant's liability. We reverse on each issue.

The accident occurred about four miles west of Gallup at approximately 3:15 a. m. An approaching passenger car collided with a truck. It is undisputed that the collision occurred three to four feet in the truck's lane of travel.

All of the occupants of the car were dead at the scene. They were: Minnie Paddock, Paul Holmes and John M. Dusman. Dusman was the driver of the car but not its owner. Our guest statute, § 64–24–1, N.M. S.A.1953 (Repl.Vol. 9, pt. 2) is not involved. The Administrator of Mrs. Paddock's estate sued the Administrator of Dusman's estate, alleging negligence of Dusman as the cause of the accident. Of the various affirmative defenses only contributory negligence was submitted to the jury. There is no cross-appeal concerning affirmative defenses that were not submitted.

*Evidence of contributory negligence.*

■ Over plaintiff's objection, the trial court instructed the jury concerning contributory negligence, U.J.I. 13.1, and Mrs. Paddock's duty to use due care for her own safety, U.J.I. 12.3. Neither instruction should have been given unless there was evidence or inference to support a determination that Mrs. Paddock was contributorily negligent. Was there such evidence or inference?

Assuming there was evidence from which it could be inferred that Dusman was fatigued or drowsy, there is neither evidence nor inference that Mrs. Paddock knew or should have known of the fatigue or drowsiness. Compare Perini v. Perini, 64 N.M. 79, 324 P.2d 779 (1958).

The truck driver testified that when he first saw the car approaching him "* * * this car appeared to be in working order. His lights were dim. He didn't seem to be exceeding the speed limit and shortly before I got to him he started veering on over into my lane of traffic and I went over to the right of the road on the shoulder as far as I dared and started stopping. * * * The impact was so quick, the whole thing took place so quick I didn't have time to do much thinking about anything, * *." The car came over "gradually." The truck driver blinked his lights when "* * * I saw him crowding up on the center * *" line. The investigating officer testified there was no indication the car was speeding.

■ There is neither evidence nor inference that Mrs. Paddock was aware that the car would crowd up to and cross the center line of the highway into the truck's path prior to it doing so. See Trujillo v. Chavez, 76 N.M. 703, 417 P.2d 893 (1966). Specifically, there is neither evidence nor inference of contributory negligence from the way the car was being operated.

The remaining evidence, in any way related to the question of contributory negligence on the part of Mrs. Paddock follows.

Clay Langholtz testified that he came to Gallup with Dusman. They were strangers to the City. They arrived between 9:30 and 10:00 p. m., obtained rooms in a motel and then ate dinner. Langholtz last saw Dusman about 11:00 p. m. when Dusman left to "* * * look around the town and get a little more to eat, he was still hungry." Langholtz characterized Dusman as a very likeable person who would fraternize with just about anyone and as one who would take a "* * * drink or two just sociably, never to any extent." According to Langholtz, Dusman had not partaken of any intoxicating beverages during the day nor up to the time Dusman left him at 11:00 p. m. Langholtz had known Dusman for more than twenty-five years and was a good friend. Dusman did not take the car when he left Langholtz at 11:00 p. m.

The husband of Minnie Paddock testified that she was to go out and pay some bills during the afternoon prior to the accident. When he returned from work about 7:00 p. m. she was not at home. He did not see his wife that evening before he went to bed. He was not concerned with his wife's absence but thought she was visiting friends and would be home any minute. Mrs. Paddock had a baby about a week before the accident and had been out of the hospital two or three days. According to her husband, Mrs. Paddock drank beer, but not to excess.

We have an inference of Mrs. Paddock and Dusman in one another's company at 1:00 a. m. The White Spot Bar in Gallup is popular with Navajos. Mrs. Paddock and her cousin, Paul Holmes (the third decedent), were Navajos. According to the bartender, Mrs. Paddock came into the bar once or twice a week. At 1:00 a. m. the bartender observed Mrs. Paddock in the bar with her cousin and a "white man." The three were in the bar until 1:50 a. m. The bartender served each of them two beers "at most." When they left they bought a six-pack of beer.

The truck driver saw some beer cans at the scene. One can was leaking but he

didn't know whether it had been opened or punctured in the accident. The truck driver detected no odor of alcohol in the vicinity of the car.

Inside the car, the investigating officer observed an unopened six-pack and several broken bottles of beer. He did not detect the presence of alcohol on any of the dead. The car was traveling toward Gallup when the accident occurred. The officer was unable to ascertain where the car had been. He checked two or three bars in Gallup and determined the occupants of the car had been at the White Spot Bar. He did not determine when they had been at this bar nor the extent of their drinking. He could not determine where the beer was located in the car prior to the accident.

The foregoing is not evidence, and does not support an inference that either Dusman or Mrs. Paddock was intoxicated.

What, then, is defendant's theory of contributory negligence? It is that both Dusman and Mrs. Paddock had been drinking and that they were strangers prior to 11:00 p. m. of the night of the accident. Precisely what factual support for this theory is found in the foregoing evidence?

What is the evidence concerning drinking? There is evidence permitting an inference that Mrs. Paddock was a recognized customer of the White Spot Bar, but no evidence that she was in that bar on the day of the accident or prior to 1:00 a. m. on the night of the accident. There is no evidence that she had anything to drink before being seen in the bar at 1:00 a. m. There is evidence that Dusman had not had anything to drink up to 11:00 p. m. There is no evidence concerning Dusman or his drinking between 11:00 p. m. and 1:00 a. m., at which time it may be inferred he was in the bar. Thus, there is no evidence of drinking prior to 1:00 a. m.

There is evidence or inference that Mrs. Paddock and Dusman each drank two beers in the fifty-minute period ending at 1:50 a. m., and this drinking was in the presence of one another.

From 1:50 a. m. until the accident there is evidence of intent to drink more beer but neither evidence nor inference that this intent was carried out. They purchased a six-pack upon leaving the bar; there was an unopened six-pack in the car after the accident. There were broken beer bottles in the car after the accident but nothing to indicate when those bottles got in the car or whether they were empty or full before being broken.

There is an inference that Dusman and Mrs. Paddock were strangers prior to 11:00 p. m. on the night of the accident and that they met some time between 11:00 p. m. and 1:00 a. m.

Defendant's theory of contributory negligence rests, then, on the meeting of strangers who consumed two beers in one another's presence over an hour before the accident.

In Ford v. Etheridge, 71 N.M. 204, 377 P.2d 386 (1962), it is stated: " * * * No case that we can discover has gone so far as to say the act of becoming drunk * * without more, convicts a passenger of contributory negligence. * * *" There, a finding, after trial, that the passenger was contributorily negligent had no factual support because there were no facts putting the passenger on notice that he should exercise care for his own safety. The driver had given " * * * no hint of negligence, inability to carefully drive the car, or impending danger, * * *" prior to the negligent act resulting in the passenger's death.

Applying *Ford,* supra, to this case, Mrs. Paddock's consumption of two beers, in itself, is not a sufficient basis for finding her contributorily negligent. Although a passenger has a duty to exercise reasonable care for her own safety, the issue is whether " * * * a duty arose on the part of plaintiff's decedent [Mrs. Paddock] to anticipate injury because of the driver's negligence and to take precautionary steps based upon this duty." Ford v. Etheridge, supra.

Mrs. Paddock's consumption of two beers does not raise a factual issue as to her contributory negligence except as it bears on a duty on her part to anticipate injury because of the driver's negligence. Our concern, then, is with the driver's drinking.

■ If a passenger knowingly rides in a car whose driver is under the influence of alcohol there is a factual issue as to the contributory negligence of the passenger. Schall v. Mondragon, 74 N.M. 348, 393 P.2d 457 (1964); Fowler v. Franklin, 58 N.M. 254, 270 P.2d 389 (1954). Mrs. Paddock rode in the car and she knew that Dusman had consumed two beers. This is evidence that Mrs. Paddock "knowingly" rode with a car operator who had been drinking. But there must be more than knowledge of drinking, because a person who has taken a drink of an intoxicating beverage is not necessarily under its influence. State v. Sisneros, 42 N.M. 500, 82 P.2d 274 (1938).

There must be knowledge on the part of the passenger that the driver of the car is "under the influence" of an intoxicating beverage. Garrett v. Howden, 73 N.M. 307, 387 P.2d 874 (1963); Potter v. Wilson, 64 N.M. 211, 326 P.2d 1093 (1958). There must be some evidence of "under the influence" because alcohol affects people in different ways. For example, in Griego v. Conwell, 54 N.M. 287, 222 P.2d 606 (1950), there was testimony that "ordinarily" it takes 10 to 12 hours for alcohol to leave a person's bloodstream. In *Griego*, supra, some 4½ to 5½ hours after drinking "three highballs," medical tests showed the blood of the person tested to be free of alcohol.

Here, Dusman had consumed two beers. There is no other evidence or inference that Dusman was "under the influence." Is the evidence of two beers sufficient? In Garrett v. Howden, supra, the driver had three or four drinks of Scotch around breakfast time. The accident happened about 1:30 p. m. The opinion states there was no showing that the drinking " * * * had any effect on the driver's ability * *." In Lopez v. Maes, (Ct.App.), 81 N.M. 693,

472 P.2d 658, decided June 19, 1970, it was held that the consumption of "about" six beers during a two-hour period immediately prior to the accident did not give rise to an inference that the driver was under the influence of intoxicating liquor.

In Zumwalt v. Lindland, 239 Or. 26, 396 P.2d 205 (1964), the driver had consumed about seven beers. The question was whether that amount of drinking, known to the passenger, would support submission of the issue of contributory negligence to the jury. The opinion states:

"We need not decide, at this time, how much or how little beer at either end of the scale will require the court to withdraw the question from the jury. We do hold, however, that upon the evidence in the case at bar a jury could say that the amount of alcohol consumed was sufficient to put a reasonable man upon inquiry concerning the fitness of his driver * * * *"

In Howell v. Lawless, 260 N.C. 670, 133 S.E.2d 508 (1963), the driver consumed three beers and three "medium" drinks of vodka at least 2½ hours prior to the accident and the passenger knew it. It was held there was a factual issue as to the passenger's contributory negligence. In Meade v. Meade, 206 Va. 823, 147 S.E.2d 171 (1966), the driver and the passenger had "several beers" together at "several" taverns. It was held there was a factual issue as to the passenger's contributory negligence. Compare Basham v. Terry, 199 Va. 817, 102 S.E.2d 285 (1958).

The decisions, however, are not uniform. Cameron v. Boone, 62 Wash.2d 420, 383 P.2d 277 (1963), holds that " * * * one drink of whiskey, volume undisclosed, * * * *" was insufficient to raise a factual issue as to whether the driver was under the influence of or affected by intoxicating liquor. However, it was held that a jigger of whiskey and two or three beers, raised a factual issue in Shaw v. Browning, 59 Wash.2d 133, 367 P.2d 17 (1961). Three glasses of beer "sometime before" was held not to be proof of unfitness to drive in

Landy v. Rosenstein, 325 Pa. 209, 188 A. 855 (1937). Three, not more than four, beers were insufficient to support a jury finding of driving while under the influence "* * * without other evidence tending to show that the defendant * * did not have the normal use of his mental and physical faculties by reason of the use of an intoxicating beverage, * * *" Morgan v. Luna, 337 S.W.2d 139 (Tex. Civ.App.1960).

In Enos v. Montoya, 158 Cal.App.2d 394, 322 P.2d 472 (1958), the driver had about four beers during the day and four beers during a beach party that night. The accident happened when leaving the party. It was held there was no evidence that the passenger knew or should have known that the host was incapable of careful driving. Where the issue was intoxication (as opposed to "under the influence"), "several" beers were not evidence of intoxication in Milligan v. Harward, 11 Utah 2d 74, 355 P.2d 62 (1960), nor were two beers several hours before the accident in Vignoli v. Standard Motor Freight, Inc., 418 Pa. 214, 210 A.2d 271 (1965).

As in Zumwalt v. Lindland, supra, we do not say how much or how little beer consumed by the driver and known to the passenger raises a factual issue as to the passenger's contributory negligence. However, on the basis of the foregoing authority, we hold that Mrs. Paddock's knowledge that Dusman had consumed two beers more than an hour before the accident was insufficient to raise a factual issue as to her contributory negligence.

The authority cited by defendant is distinguishable on the facts. In Petrone v. Margolis, 20 N.J.Super. 180, 89 A.2d 476 (1952), quoted in Schall v. Mondragon, supra, the passenger knew, before entering the car, that the driver was noisy and boisterous, close to intoxication, a little high and had been drinking too much. Reece v. Reece, 14 Automobile Cases 2d (CCH) 1381 (Tenn.Ct.App.1958), does not go to the question of how much drinking raises the factual question of contributory negligence;

there, the opinion states only that the passenger knew of the driver's intoxication. In Hurt v. Gwinn, 142 W.Va. 259, 95 S.E. 2d 248 (1956), the passenger was held to have been contributorily negligent as a matter of law. Some of the facts relied on in reaching that conclusion were that the driver and the passenger had been drinking excessively and were under the influence of intoxicants during the drive that resulted in the accident.

We have held that the beer consumed by Mrs. Paddock and Dusman raised no issue as to her contributory negligence. The only remaining evidence to be considered is that Mrs. Paddock rode with Dusman when Dusman was a stranger to her. Being a stranger, we infer that Mrs. Paddock knew nothing about Dusman's driving ability, experience or habits.

This lack of knowledge raised no issue as to the contributory negligence of Mrs. Paddock in riding in the car driven by Dusman. Ordinarily, a guest passenger has a right to assume the driver is a reasonably safe and careful driver. Hammon v. Brazda, 173 Neb. 1, 112 N.W.2d 272 (1961). Although the guest takes the host as he finds him, so far as skill and judgment are concerned, nevertheless the guest, upon entering the automobile may assume the host will obey the laws of the road. Wheeler v. Rural Mut. Cas. Ins. Co., 261 Wis. 528, 53 N.W.2d 190 (1952). See 4 Blashfield, Cyclopedia of Automobile Law and Practice, §§ 2392, 2393 (Perm.Ed.1946). 4 Blashfield, § 2393, supra, states: "In the absence of special circumstances indicating the nonexistence of such qualities, the guest or passenger may rightfully rely on the prudence, care, and skillfulness of the operator; * * *."

The only evidence in this case is that Dusman operated the car in a proper manner until he crossed over the center-line into the truck's lane of travel. There is neither evidence nor inference indicating that Mrs. Paddock could not assume that Dusman was a careful or safe driver; nothing to indicate a lack of prudence or

skillfulness on Dusman's part. There simply is no evidence of contributory negligence by Mrs. Paddock because she rode with a stranger.

The trial court erred in instructing the jury on contributory negligence and Mrs. Paddock's lack of due care because there was neither evidence nor inference raising those issues.

### Should there have been a directed verdict for plaintiff?

Plaintiff moved for a directed verdict on the issue of defendant's liability at the close of all the evidence. He asserted that the only issue of fact to be decided by the jury was that of damages. He contends the denial of his motion was error.

The issues as to liability, submitted to the jury, were negligence of Dusman, contributory negligence of Mrs. Paddock and proximate cause.

We have held there were no facts raising a submissible issue as to Mrs. Paddock's contributory negligence.

Section 64–18–8, N.M.S.A.1953 (Repl.Vol. 9, pt. 2), provides that vehicles are to be driven upon the right half of the roadway and " * * * where practicable, entirely to the right of the center thereof, * * * " None of the statutory exceptions are applicable. The only evidence in this case is that the car operated by Dusman was not driven on the right half of the roadway, was not driven to the right of the center-line, but was driven on the left half of the roadway, into the truck's lane of travel. When it was shown that the Dusman car was on the wrong side of the road at the instant of the collision, the burden was on defendant to explain Dusman's presence there. Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671 (1952). See Martinez v. Scott, 70 N.M. 354, 374 P.2d 117 (1962); Hartford Fire Insurance Company v. Horne, 65 N.M. 440, 338 P.2d 1067 (1959).

Here, there is no explanation. All we have are the facts showing a violation of § 64–18–8, supra. Such a violation is negligence as a matter of law since the violation was neither excused nor justified. U.J.I. 11.1 and 11.2. The facts concerning Dusman's negligence not being in dispute, there was no issue for the jury as to that negligence. Martinez v. Scott, supra; Hartford Fire Insurance Company v. Horne, supra.

Proximate cause is an ultimate fact—usually an inference to be drawn from the facts proved. It becomes a question of law only when the facts regarding causation are undisputed and the reasonable inferences from those facts are plain, consistent and uncontradictory. Chavira v. Carnahan, 77 N.M. 467, 423 P.2d 988 (1967); Dahl v. Turner, 80 N.M. 564, 458 P.2d 816 (Ct.App.1969).

This is a case where proximate cause may be determined as a matter of law. Compare Bouldin v. Sategna, 71 N.M. 329, 378 P.2d 370 (1963). It is undisputed that Dusman drove the car on the wrong side of the road, collided with the truck in the truck's lane of travel and that Mrs. Paddock died in that collision. No reasonable contradictory inference can be drawn from the facts. There was no issue for the jury concerning proximate cause.

There being no question of fact to be decided by the jury on the issues of negligence, contributory negligence and proximate cause, plaintiff was entitled to a directed verdict on the issue of liability. The trial court erred in denying plaintiff's motion. See Moyer v. Merrick, 155 Colo. 73, 392 P.2d 653 (1964).

The judgment for defendant is reversed. The cause is remanded with instructions to award a new trial limited solely to the question of plaintiff's damages.

It is so ordered.

SPIESS, C. J., and OMAN, J., concur.