531 P.2d 1238

Johnnie **ARCHIBEQUE,** As personal representative and administrator of the Estate of James F. Perkins, Deceased, Plaintiff-Appellant,

v.

B. J. **HOMRICH,** Administrator of the Estate of Felix J. Roberson, Jr., Deceased, Defendant-Appellee.

No. 1497.

Court of Appeals of New Mexico.

Feb. 19, 1975.

Michael Fitzpatrick, Smith, Ransom & Gilstrap Law Offices, Albuquerque, for plaintiff-appellant.

Sarah M. Bradley, Farlow & Lill, Albuquerque, for defendant-appellee.

## CERTIFICATION TO THE SUPREME COURT

PER CURIAM.

Pursuant to § 16–7–14(C)(2), N.M.S.A. 1953 (Repl. Vol. 4) the Court of Appeals may certify to the Supreme Court for its determination issues of substantial public interest.

Attached hereto and made a part of this Certification are three separate and non-concurring opinions rendered in the above cause by the panel of the Court of Appeals. The opinion of Judge Hernandez would reverse the lower Court and remand for a new trial on the ground that the instructions were unsupported by the evidence. The opinion of Judge Sutin would reverse the lower Court for the same reasons, but would remand with instructions to direct a verdict in plaintiff's favor and to conduct a hearing on the question of damages, only. The opinion of Judge Hendley would affirm the result reached at trial on the ground that the doctrine of *res ipsa loquitur* is not applicable on the facts of this case.

It appearing that the three proposed opinions do not decide this case and that although a majority exists for reversal, considerable uncertainty in the law would be created by the absence of guidance for future procedure in the case.

It further appearing that the Court of Appeals is precluded from calling addition-

al judges by § 16–7–11, N.M.S.A.1953 (Repl. Vol. 4), and

It further appearing that an uncertain state of law should not exist and because avoidance of the same involves an issue of substantial public interest, the matters raised on appeal should be resolved by the Supreme Court.

Now, therefore, pursuant to § 16–7–14(C)(2), supra, the above captioned case is hereby certified to the New Mexico Supreme Court for final decision.

(s) WILLIAM R. HENDLEY

WILLIAM R. HENDLEY, Judge

(s) LEWIS R. SUTIN

LEWIS R. SUTIN, Judge

(s) B. C. HERNANDEZ

B. C. HERNANDEZ, Judge

OPINION

HERNANDEZ, Judge.

This action was brought by the personal representative and administrator of the estate of James F. Perkins, deceased, against the administrator of the estate of Felix J. Roberson, deceased, for wrongful death. After trial, the jury rendered a verdict in favor of defendant. Plaintiff appeals alleging six points of error based upon the trial court's instructions to the jury.

The pertinent facts are these: Plaintiff's decedent, a 21-year-old serviceman, stationed with the Air Force in Idaho, was driving to his home in Texas to be married. On the evening of July 15, 1970, he called his fiancee from a toll booth in Utah and told her that he would be arriving sooner than previously indicated because he had picked up a hitchhiker, defendant's decedent herein, who had offered to help with the driving. He told his fiancee that between the two of them, they could drive straight through. On July 18, 1970, employees of the New Mexico Highway Department found plaintiff's decedent's 1969 Opel station wagon in an obscured position at the bottom of an arroyo on the east side of state road 44, approximately 13 miles north of Cuba, New Mexico. Both occupants were dead. Defendant's decedent was on the drivers side of the front seat slumped over the steering wheel, and plaintiff's decedent was on the passenger side. The record indicates that the two had died instantly because there was no indication that either had moved after the accident. It was estimated that they had been dead two or three days.

The state police investigation reveals that the car had been traveling south when it ran off the road on the right, or west side of the highway. Tire tracks at the scene indicate that the car continued on the right hand shoulder of the highway for 274 feet; it then returned onto the highway, crossing over onto the left, or east shoulder and plunged into the arroyo which was about 14 feet deep. The course traveled by the vehicle after it first left the highway on the west side to the point where it returned before crossing to the other side, could best be described as a gradual arc, measuring at its crest 9 feet from the west edge of the pavement. From the point where it returned onto the pavement to the point at which it left again on the east side, measured 73 feet diagonally. There were no marks on these 73 feet of the highway to indicate any braking on the part of the driver. From the east edge of the pavement, the vehicle then traveled approximately 83 feet to the point where it was found, some 24 feet from the east edge of the road. The police report shows that the car rolled over once in the arroyo and came to rest right side up, facing west. The total distance from where it initially left the highway on the west side to where it came to rest on the east side was 430 feet. The highway at the point of the accident, and for a considerable distance in both directions, is 22 feet wide, paved, straight and level. The weather at all pertinent times was dry.

There were no eye witnesses to the accident. One of the expert witnesses estimated the speed of the station wagon just before the accident to have been between 50 and 56 miles per hour.

I regard plaintiff's first three points as raising similar issues. They read as follows:

Point I:

"The court's statement of defendant's 'defenses' did not comply with the requirement of New Mexico Uniform Jury Instructions and deprived plaintiff of a fair trial. The possibility that the injury occurred without negligence on the part of defendant's decedent is not an affirmative defense to an action based on the doctrine of res ipsa loquitur.

Point II:

"The court improperly instructed the jury on the issue of contributory negligence. There was no evidence in the record to support a finding by the jury that plaintiff's decedent, the passenger in the vehicle, failed to exercise ordinary care for his own safety.

Point III:

"There was no evidence that defendant's decedent was confronted with a sudden emergency at the time the vehicle left the roadway. The court's instruction on the concept of sudden emergency encouraged the jury to engage in guess and speculation and deprived plaintiff of a fair trial."

N.M.U.J.I. 3.1, entitled "Issues, Complaint, Answer, Burden of Proof," reads in part as follows:

"The plaintiff claims that he sustained damages and that the proximate cause thereof was one or more of the following claimed acts of negligence:

\*  \*  \*  \*  \*  \*

"The plaintiff has the burden of proving that he sustained damage and that one or more of the claimed acts of negligence was the proximate cause thereof.

"The defendant denies the plaintiff's claims (and asserts the following affirmative defenses:) \* \* \*."

The annotation to the instruction, labeled "Directions on Use," reads in part as follows:

"\* \* \* This instruction usually cannot be drawn until all the evidence is in and the court has determined *which issues are supported by the pleadings and evidence justifying their submission to the jury.*" [Emphasis ours.]

The trial court's Instruction No. 1, which relates to Point I, herein, reads in part as follows:

\*  \*  \*  \*  \*  \*

"The defendant denies that the doctrine of res ipsa loquitur applies in this case and denies that there is any proof on the part of the defendant's decedent that he was negligent and affirmatively states that the accident in question could have occurred without negligence on the part of the defendant's decedent and that there is [sic] not any proof or facts available as to the cause of the accident in question. And further the defendant claims James Perkins was guilty of contributory negligence which was the proximate cause of his death."

Instructions Nos. 6, 11, and 13, which relate to Point II, herein, read as follows:

"No. 6. It was the duty of James Perkins before and at the time of the occurrence, to use ordinary care for his own safety.

"No. 11. When I use the expression 'contributory negligence', I mean negligence on the part of the plaintiff that proximately contributed to cause the alleged damages of which plaintiff complains.

"No. 13. In determining the issues of negligence and contributory negligence you are not to consider whether the plaintiff was more or less negligent than the defendant. New Mexico law does not permit you to compare negligence.

"The plaintiff cannot recover if he was negligent and that negligence was a proximate cause of the accident and alleged injuries even though you believe that the defendant may have been more negligent."

Instruction No. 14, which relates to Point III, herein, reads as follows:

"A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence of or the appearance of imminent danger to himself or another, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments.

"His duty is to exercise only the care that a reasonably prudent person would exercise in the same situation.

"If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by any reasonably prudent person under the same conditions[,] then he has done all the law requires of him, even though in the light of after events, it might appear that a different course would have been better and safer."

Whether or not these instructions should have been given depends upon the evidence in the case. It is error to instruct on issues which are unsupported by the evidence adduced at trial, even though they may have been formulated in the pleadings. Such instructions are misleading and induce the jury to concern itself with false issues. State v. Atchison, Topeka & Santa Fe Rwy. Co., 76 N.M. 587, 417 P.2d 68 (1966); Terry v. Biswell, 66 N.M. 201, 345 P.2d 217 (1959).

The record before us discloses no evidence that James Perkins did not use ordinary care for his own safety; or, stated conversely, there is no evidence that he was contributorily negligent. There is no evidence that defendant's decedent was confronted with a sudden emergency or peril. The State Police Officer who investigated this accident testified that: "From previous experience on accident investigation and the evidence at the scene, it was my opinion that the driver apparently dozed off, fell asleep at the wheel, at which time the vehcile went off the right hand side of the road in a gradual manner . . . ." None of the testimony given by defendant's expert at trial amounted to more than speculation and guess as to *conceivable* fact situations that might result in physical evidence such as was found. He did not give an opinion as to the cause of this accident, and defendant's consequent failure to carry its burden denied it any claim to these instructions. Compare Lovato v. Plateau, Inc., 79 N.M. 428, 444 P.2d 613 (Ct.App.1968).

Two elements must be proved before it is proper to give N.M.U.J.I. 13.14 (trial court's Instruction No. 14): first, a sudden emergency or peril and second, the absence of negligence on the part of the person confronted by the peril. By virtue of the instructions as given, it was possible for the jury to speculate that plaintiff's decedent was contributorily negligent. They also may have speculated that the driver of the station wagon, upon finding himself on the gravel shoulder through no fault of his own, over-corrected and ran the vehicle off of the other side of the road in a moment of panic.

The only effective counter to these instructions would have been proof that plaintiff's decedent was not contributorily negligent or that defendant's decedent was not faced with a sudden emergency, etc. That is to say, the instructions placed the burden of proving the negative of these issues upon the plaintiff. This is the crux of the error appealed from.

It is the party alleging the affirmative of an issue who bears the burden of proof, not the party denying it. Carter v. Burn Construction Company, Inc., 85 N.M. 27, 508 P.2d 1324 (Ct.App.1973), cert. denied, 85 N.M. 5, 508 P.2d 1302 (1973). Defendant neither offered proof at trial regarding *sudden peril* nor proof to negate the inference of *negligence* on the part of defendant's decedent. Plaintiff's first three points are thus well taken. The trial court erred in giving that part of Instruction No. 1, quoted above, and Instructions Nos. 6,

11, 13 and 14; and plaintiff was clearly prejudiced thereby.

Even though I consider plaintiff's first three points as dispositive of this appeal, I cannot, on the basis of the record as it stands, concur in the view expressed by my brother Sutin that our judicial favor for finality of judgments should lead us to direct a verdict in this case on remand. To my mind, this case yet requires a determination by the fact finder, or jury, upon proper instructions, of whether plaintiff is entitled to recover. In the. event, then, that this cause should be retried, I believe it might be helpful to conclude with a few comments regarding plaintiff's fourth and sixth points. Point IV reads as follows:

Point IV:

"The court's instruction that there was a presumption that defendant's driver was acting as the agent of plaintiff's decedent in driving the vehicle interjected a false issue in the case and deprived plaintiff of a fair trial."

The trial court's Instruction No. 8 reads as follows:

"Where a non-owner is driving and the owner is present in the car a presumption exists that the driver is the agent of the owner. This presumption is based on the theory that the owner present in the car has the right to control the driver. Such presumption may be overcome by evidence to the contrary."

This instruction does not apply in this fact situation and should not have been given. There are many presumptions in the law; their usual function is to relieve the party who bears the burden of persuasion as to a particular fact issue from having to go forward with the evidence. Our rule of evidence, No. 301, § 20–4–301, N.M.S.A.1953 (Repl. Vol. 4, 1973 Supp.) states:

"In all cases not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

The usual situation in which the presumption involved in the lower court's Instruction No. 8, supra, will be applied is where a third party sues both the driver and the owner of a car. The rationale for .its application is twofold: (1) the facts are within the peculiar knowledge of the owner and the driver of the car, and (2) they are not easily available to the third party. The giving of this instruction on the facts of the case before us placed the additional burden of the presumption upon the plaintiff who already had an obligation to prove negligence on the part of defendant's decedent by a preponderance of the evidence. Consequently, I believe it was error for the court below to apply the presumption here. The effect of this instruction, aside from unfairly increasing plaintiff's burden of persuasion, was, as plaintiff contends, to interject a false issue into the case since the factual rationale giving rise to its use was not present in this case. Plaintiff's sixth point was that:

Point VI:

"Plaintiff was entitled to a directed verdict on the issue of liability because defendant failed to show that the driver's failure to keep. the vehicle on the roadway was due to something other than the driver's negligence."

Plaintiff was not entitled to a directed verdict. The doctrine of res ipsa loquitur permits the inference of negligence by the fact finder. It does not compel an inference. Tuso v. Markey, 61 N.M. 77, 294 P. 2d 1102 (1956). Even if a defendant offers no evidence in refutation, the finder of fact is free to reject the inference.

For the reasons stated, I would reverse and grant a new trial.

HENDLEY, Judge.

I would affirm the judgment below on the ground that the doctrine of *res ipsa loquitur* is inapplicable to the facts of this case. Although there was no cross-appeal on this issue, I reach it because in my view, the correct result was reached below

albeit for the wrong reason. See Tsosie v. Foundation Reserve Insurance Co., 77 N. M. 671, 427 P.2d 29 (1967).

*Res ipsa loquitur* has two elements: (1) that the instrumentality causing the damage to the plaintiff is in the exclusive control of the defendant and (2) that the event causing the damage does not ordinarily occur in the absence of defendant's negligence. N.M.U.J.I. 12.14. Neither element has been proved in the instant case. (1) The plaintiff-passenger was the owner of the vehicle and allowed the defendant to drive it. Section 64–22–6, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2, 1972), provides that, "[i]t is unlawful for the owner . . . to permit the operation of [a] vehicle upon a highway in any manner contrary to law." This statute raises a presumption, unrebutted by any evidence in this case, that an owner is in control of his vehicle notwithstanding the fact that another is permitted to drive it. See Annot. 50 A.L.R.2d 1281 (1956). (2) It is true that plaintiff's witnesses testified that the cause of the accident was probably driver error and one witness gave his opinion that "the driver *apparently* dozed off." (Emphasis supplied). See Prosser, The Law of Torts, § 29 (4th Ed. 1971.) However, there was testimony that accidents, similar in clues left behind to the instant one, could happen in the absence of negligence. They could be caused by a bee or insect in the car, sudden illness of the the driver, cigarette ashes blowing into the driver's eye, or an oncoming motorist or animal in the car's lane of travel. Plaintiff's proof did nothing to negate any of these other possible causes. I would therefore hold the doctrine of *res ipsa loquitur* inapplicable to this case. Larkin v. State Farm Mutual Auto. Ins. Co., 233 La. 544, 97 So.2d 389 (1957); See also Annot. 79 A.L.R.2d 6 (1961).

As a practical matter, what we have here is the very unfortunate situation where two people die in an unwitnessed automobile accident leaving behind no indications or clues to use in order to assign fault. The next of kin of both plaintiff and defendant sustained a grievous loss. The loss should not be shifted in the absence of evidence that is more than mere probabilities or one man's opinion as to what "apparently" happened. As a practical matter, I would leave the losses where they lie.

SUTIN, Judge.

A. *Plaintiff was entitled to a directed verdict.*

In Wilkerson v. McCarthy, 336 U.S. 53, 65, 69 S.Ct. 413, 419, 93 L.Ed. 497, 506 (1949), Mr. Justice Frankfurter in a concurring opinion said:

When a plaintiff claims that an injury which he has suffered is attributable to a defendant's negligence—want of care in the discharge of a duty which the defendant owed to him—it is the trial judge's function to determine whether the evidence in its entirety would rationally support a verdict for the plaintiff, assuming that the jury took, as it would be entitled to take, a view of the evidence most favorable to the plaintiff. If there were a bright line dividing negligence from non-negligence, there would be no problem. Only an incompetent or a wilful judge would take a case from the jury when the issue should be left to the jury. But since questions of negligence are questions of degree, often very nice differences of degree, judges of competence and conscience have in the past, and will in the future, disagree as to whether proof in a case is sufficient to demand submission to the jury. The fact that a third court thinks there was enough to leave the case to the jury does not indicate that the other two courts were unmindful of the jury's function. The easy but timid way out for a trial judge is to leave all cases tried to a jury for jury determination, but in so doing he fails in his duty to take a case from the jury when the evidence would not warrant a verdict by it. A timid judge, like a biased judge, is intrinsically a lawless judge.

For the duties of a judge on this Court, see, Lasky, Observing Appellate Opinions From Below The Bench, 49 Calif.L.R. 831 (1961); A Return To The Observatory Below The Bench, 19 S.W.L.R. 679 (1965).

Leflar, Appellate Judicial Opinions (West, 1974), pp. 84, 85, quotes the following from Lasky's articles, the latter being an address before the Conference of Chief Justices:

> The functions of the appellate opinion are to state the law, to mollify the litigants, and to make the judges think.
>
> \*  \*  \*  \*  \*  \*
>
> When a judge need write no opinion, his judgment may be faulty. Forced to reason his way step by step and set down these steps in black and white, he is compelled to put salt on the tail of his reasoning to keep it from fluttering away.

The purpose of these quotations is not to trespass on the feelings or dignity and self-respect of trial and appellate judges. We are ofttimes products of average legal experience and judicial ability. But we should seek finality in civil jury trials, and if appealed, we should not send the case back for "further anguished and expensive litigation" when the facts travel in only one direction and precedent closes the road.

These observations are pertinent in this "no eyewitness" case involving two deceased persons in a single car fatal accident in which the driver crossed over the wrong side of the highway and plunged into an arroyo.

The evidence is undisputed that Roberson operated the automobile with Perkins as a passenger. Roberson first drove onto the right hand shoulder of the road 274 feet. He then veered back onto the highway, leaving scuff marks, travelling partially sideways and then crossed over in arc-fashion onto the opposite shoulder of the road and plunged into an arroyo. Roberson and Perkins both died. There was no evidence, nor facts from which reasonable inferences could be drawn that Perkins was negligent.

Roberson's conduct, unexplained, was negligent. The burden of explanation for this negligent conduct was on defendant. No explanation was given. By speculation and conjecture, a number of causes can be found. We are compelled, however, to cast aside our reflections, our thoughts, ideas or opinions which are formed as a result of meditation. Our function is to state the facts, the law and to think in the process of writing.

To date, we have a confirmed rule called "The Burden of Explanation". When the undisputed evidence puts the operation of a vehicle in the wrong lane of a roadway, the operator has the burden of going forward with the evidence to explain in order to avoid negligence per se. Pavlos v. Albuquerque National Bank, 82 N.M. 759, 487 P.2d 187 (Ct.App.1971), J. Sutin, dissenting. No explanation was given by defendant. Plaintiff produced an expert witness who opined that Roberson went to sleep at the wheel. Defendant produced an expert, but no opinion was given in explanation. Roberson was negligent as a matter of law.

This Court decided under similar facts, after judgment for the defendant, that plaintiff was entitled to a directed verdict on the issue of liability because no question of fact arose on the issues of negligence, contributory negligence and proximate cause. Paddock v. Schuelke, 81 N.M. 759, 473 P.2d 373 (Ct.App.1970). In this case, Mrs. Paddock was riding in a car driven by Dusman. Both died in an accident. The Court said, at 765, 473 P.2d at 379:

> When it was shown that the Dusman car was on the wrong side of the road at the instant of the collision, the burden was on defendant to explain Dusman's presence there.

Judges who read this record can disagree. Each one can mentally conclude a different result and find the law to fit the fiddle. Each one can distinguish this case from *Pavlos* and *Paddock* by enunciating a

rule that a *collision* on the wrong side of the highway differs from a plunge into an arroyo off the wrong side of the highway.

Some states have adopted the presumption of due care in "no eyewitness" cases. New Mexico has not. See U.J.I. 12.16. Courts have differed strongly on the application for res ipsa loquitor to "no eyewitness" cases. All of the words used in opinions to express these views, a style of writing, gush forth annually like the Mississippi River.

I adopt the language of Chief Justice Bickley in a concurring opinion in State v. Jones, 44 N.M. 623, 634, 107 P.2d 324, 331 (1940):

> The doctrine frequently termed "the rule of stare decisis", to the effect that when a point has once been settled by decision, it forms a precedent which is not afterwards to be departed from or lightly overruled or set aside, is a sound doctrine. The rule has for its object the salutary effect of uniformity, certainty, and stability in the law. It is grounded on public policy and as such is entitled to great weight and must be adhered to, unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong.

I am impressed that *Pavlos* and *Paddock*, and cases cited, form a precedent on the "Burden of Explanation" from which we should not depart in arriving at a decision even in a tragic case. We should follow this precedent.

Plaintiff was entitled to a directed verdict on the issue of liability.

B. *Suggestions If New Trial Granted*

(1) *Plaintiff was entitled to instructions on statutory violations.*

The majority opinion does not decide plaintiff's Point V that plaintiff was entitled to have the jury instructed on the driver's statutory duty to drive on the right half of the roadway and to keep the vehicle within a single traffic lane as provided by §§ 64–18–8(a) and 64–18–16(a), N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2).

Plaintiff tendered U.J.I. 11.1 on statutory violations which the trial court refused. No reasons were given for the refusal. The evidence was sufficient to warrant the giving of the instruction and the failure to do so was reversible error. Rogers v. Thomas, 81 N.M. 723, 472 P.2d 986 (Ct. App.1970). See, Paddock v. Schuelke, supra.

(2) *The trial court failed to follow rules on jury instructions.*

The record does *not* show:

(1) That the trial court did a voir dire of jurors pursuant to U.J.I. 1.1.

(2) That the trial court admonished the jurors on conduct pursuant to U.J.I. 1.2. Section 21–1–1(51)(1)(b), N.M.S.A.1953 (Repl.Vol. 4).

(3) That the jury instructions were sent to the jury room pursuant to Rule 51, 1(g), supra.

(4) That the trial court, at the close of the case, submitted applicable portions of U.J.I. 1.2 with other instructions sent to the jury room. Rule 51, 1(b), supra.

(5) That the trial court explained why plaintiff's requested U.J.I. 11.1 was refused pursuant to Rule 51, 1(c), supra.

(6) That all objections to instructions were made in the presence of the court before retirement of the jury, and reasons stated for overruling objections pursuant to Rule 51, 1(i), supra.

The record does not show that the attorneys suggested compliance with Rule 51, nor that the error was waived.

A failure to comply with each of these requirements constitutes error. Williams v. Town of Silver City, 84 N.M. 279, 290, 502 P.2d 304 (Ct.App.1972), J. Sutin, partially concurring and dissenting. It is reversible error if the failure to comply prejudicially affected a substantial right of the parties. Jewell v. Seidenberg, 82 N.M. 120, 477 P.2d 296 (1970).

A month before *Jewell*, the same Court in Clinard v. Southern Pacific Company,

82 N.M. 55, 60, 475 P.2d 321, 326 (1970) said:

> Considerable hours of hard work by both Bench and Bar led to the adoption of the Uniform Jury Instructions. They are well-calculated to expedite trials and the administration of justice. This Court will not let that work and those beneficial purposes be chipped away. . . . U.J.I. 17.8, specifically requested by the railroad, should have been given and the failure of the trial court to explain why it was not, and to follow the clear, mandatory requirements of Rule 51(1)(c), supra, constitutes reversible error in this case.

Today, the Supreme Court is completely changed in authorship. It may declare each failure of compliance with Rule 51 to be prejudicial or reversible error.

These warnings have not alerted all trial judges and lawyers. The purpose of this point, restated again, is not to trespass on the feelings or dignity and self-respect of the trial judge. Its purpose is to seek finality in civil jury cases in trial and appellate courts. By consistent reversals, clients suffer "further anguished and expensive litigation", or settlements which are forced upon them after time and expense have been wasted.

The judgment for defendant is reversed. The cause is remanded with instructions to award a new trial limited solely to the question of plaintiff's damages.

It is so ordered.