## C. M. WOOD v. MICHIGAN MILLERS MUTUAL FIRE INSURANCE COMPANY.

(Filed 23 November, 1955.)

**1. Insurance § 54—**

Testimony of facts tending to show that the damage to the insured house under construction resulted from wind, and testimony *contra* tending to show that the damage resulted from pressure of rain water against the foundation wall, requires the overruling of defendant's motion to nonsuit in an action on a windstorm policy, the credibility of the conflicting testimony being for the jury.

**2. Same: Evidence § 49—**

In an action on a windstorm policy, witnesses may testify as to conditions they saw at the time they visited the scene, as facts within their knowledge, upon which the conclusion as to whether the damage was caused by wind or rain may be drawn by the jury, but it is error to permit the witnesses to give their opinions that the damage was caused by wind, since this allows them to decide the ultimate issue and thus invade the prerogative of the jury.

APPEAL by defendant from *Crissman, J.,* June Term, 1955, FORSYTH. New trial.

Civil action on a windstorm damage rider attached to a fire insurance policy on a house under construction.

At the time complained of, the plaintiff was erecting a dwelling house on premises referred to in the complaint. The defendant issued to plaintiff its standard fire insurance policy on said building which contained a provision as follows: "In consideration of $6.00 premium, and subject to provisions and stipulations (hereinafter referred to as 'provisions') herein and in the policy to which this endorsement is attached, including riders and endorsements thereon, the coverage of this policy is extended to include direct loss by Windstorm, Hail . . ."

On 15 October 1954 the construction of the house covered by the policy had proceeded so that the framework of the first floor was completed. The ceiling joists were in place, and some of the rafters were cut and lying on top of the ceiling joists. There were no walls or floors above the ground level. The house was resting on a concrete footing and had a foundation built partly below ground level of concrete blocks and bricks. On that day Hurricane Hazel passed in the vicinity of the house, bringing heavy rains and winds. The concrete block walls broke, the framework sagged, and the building suffered certain other damages, all of which plaintiff alleges were caused directly by the windstorm.

On the other hand, the defendant contended that the damages sustained by plaintiff were the result of rain water.

Plaintiff was permitted to testify that in his opinion the damages to the building under construction were the result of the wind. Likewise, the court permitted three witnesses who visited the scene after the occurrence and observed the conditions then existing to testify, over the objection of the defendant, that in their opinion the wind caused the damage.

There was evidence that a strong wind was blowing in that area at the time complained of, and plaintiff testified as follows:

"When I got to the building, the wind was so severe it was rocking the building up and down on the foundation, and there was approximately four to six foot of the foundation done kicked out from under it. I was there, I suppose, something like five to eight minutes, and the wind was just rocking the building on the foundation, and it was just buckling in from all the back side and northeast end. The building then had started slipping on the foundation, what was still standing, and throwing all the pressure to the south wall, and the timbers was just rocking every which way, and it was raining then so bad and the wind was so stiff that I left, for I was afraid to stay out there in it. . . . The wind was so terrific it was just rocking the timbers on the foundation, and this wall was giving, first one way and then another, towards the basement, and then the timbers were working it back out as it come up on the other side. . . . the wind would raise the building some 6 to 8, 10 inches off of the foundation on the south side, throwing it on the east side—I mean, off of the west side onto the east side, and on the east side was where the foundation had broken up first at; and that afternoon, when I made the pictures, the building had moved on the foundation something like 2 to 4 inches. . . . When I saw the wind raise the building 6 to 10 inches high, at that time it was raining hard and the wind was terrific. There was no water running in the building at that time. . . . I say that when I got there that morning the wind was rocking it on the foundation from 6 to 10 inches, with each puff of wind that was coming; in other words, the framework would rise 6 inches to 10 inches above the foundation with each puff of wind. I say the wind picked up that open framework construction, and that I saw the wind lift it as much as ten inches above that foundation. . . . The wind was rocking that empty frame of the house from the west to the east, from 6 to 10 inches off of the west wall, west foundation. I saw the timbers on that west wall rise in the air as much as 6 to 10 inches. . . . The wind was rocking it back and forth on the foundation."

The wind was coming from the west. The cement foundation wall caved in on the east side and the building, according to the pictures offered in evidence, sank down on that side. The framework did not topple over and the loose ceiling joists did not blow off.

Issues were submitted to and answered by the jury in favor of the plaintiff. There was judgment on the verdict and defendant appealed.

*Deal, Hutchins & Minor for defendant appellant.*
*Buford T. Henderson for plaintiff appellee.*

Barnhill, C. J. While defendant offered evidence, and there were facts and circumstances tending to show, that the pressure of the rain water against the east foundation wall caused the damage, we cannot say that plaintiff's testimony, if accepted by the jury, is insufficient to support a verdict for the plaintiff. The credibility of the testimony was for the jury. Hence, there was no error in the order of the court overruling the motion to dismiss as in case of nonsuit.

The admission of the opinion of lay witnesses who visited the scene after the hurricane had passed must be held for error. It was permissible for them to describe to the jury the conditions as they found them at the time they visited the scene, but it was improper to permit them to make deductive conclusions from what they saw and observed. These conclusions, in the form of opinions, relate to the ultimate fact to be determined by the jury. To allow them to state what in their opinion caused the damage amounting to nothing more than permitting them to decide the issue which was submitted to the jury, and they were thus permitted to invade the prerogative of the jury.

Opinion evidence is inadmissible whenever the witness can relate the facts so that the jury will have an adequate understanding of them, and the jury is as well qualified as the witness to draw inferences and conclusions from the facts. Stansbury, Evidence, 232, sec. 124. A witness will not be allowed to give his opinion on the very question for the jury to decide. Stansbury, Evidence, 236, sec. 126.

"The witness must speak of facts within his knowledge. He cannot, under the guise of an opinion, give his deductive conclusion from what he saw and knew." *Tyndall v. Hines Co.*, 226 N.C. 620, 39 S.E. 2d 828. See also *Patrick v. Treadwell*, 222 N.C. 1, 21 S.E. 2d 818; *S. v. Roberson*, 240 N.C. 745, 83 S.E. 2d 798; *S. v. Becker*, 241 N.C. 321, 85 S.E. 2d 327; Anno. 23 A.L.R. 2d 136.

*LaBris v. Western Nat. Ins. Co.*, 59 S.E. 2d 236 (W. Va.), is a case almost on all fours. There as here opinion evidence was admitted. In discussing the case the Court said in part: "At best the opinion testimony of these non-expert witnesses is highly conjectural, involves the ultimate issue in the case, and tends to invade the province of the jury." What was there said is applicable here.

As to the instructions of the court on what constitutes direct damage by windstorm, see *Miller v. Insurance Assoc.*, 198 N.C. 572, 152 S.E. 684.

For the reasons stated there must be a

New trial.