450 P.2d 442

James B. ADAMSON, an individual, d/b/a Adamson Hot Oil Service, Appellee,

and

French Tool and Supply Company, Inc., a corporation, and Universal CIT Corporation, a corporation, Appellees,

v.

HIGHLAND CORPORATION, a corporation, Stevenson Tank Company, Inc., a corporation, and L. V. Pennington, Appellants.

No. 201.

Court of Appeals of New Mexico.

Jan. 24, 1969.

R. D. Mann, John W. Bassett, Jr., Atwood & Malone, Roswell, for Highland Corp. and Pennington.

Ray C. Cowan, Girand, Cowan & Reese, Hobbs, for Stevenson Tank Co.

Donald S. Bush, Artesia, for appellees.

OPINION

OMAN, Judge.

Defendants have appealed from a judgment entered against them in favor of plaintiff for damages allegedly sustained by reason of the negligence of defendants.

Our disposition of defendants' first point relied upon for reversal disposes of all other points and contentions asserted by the parties.

Defendants' position is that the trial court erred in refusing to direct a verdict for them, and subsequently in refusing to enter a judgment in their favor notwithstanding the verdict, because the evidence fails to establish that their negligence was a proximate cause of the damages. We agree.

There is no dispute on the issue of negligence. The sole issue is the sufficiency of the evidence to support a determination that the negligence was a proximate cause of the fire which resulted in the destruction of plaintiff's property.

The facts are:

(1) On March 6, 7 and 8 of 1966, defendants installed a "heater treater" or "heater settler," hereinafter called "settler," on an oil lease, and connected it to a separator, which was located just to the south of the settler and which in turn was connected with an oil well on the lease.

(2) A vent line, which carried gas and water from the settler, was extended in an easterly direction to a point approximately 55 feet from the fire box in the settler. Defendant Highland was to dig a pit and extend this line into that pit. The pit was dug on March 10, 1966, and was located about 100 feet to the east of the settler and approximately 50 feet east of the end of the vent line. Defendant Highland failed to extend the vent line to the pit.

(3) The settler was put in operation shortly after its installation, including the lighting and maintenance of the fire in the fire box, and it continued in operation until after the fire on March 15, 1966, which destroyed plaintiff's property.

(4) In addition to the settler, the vent pipe therefrom, and the separator, there were two 500 barrel storage tanks situate in the area. One of these tanks was located approximately 65 feet north of the settler, and this will be referred to as the west tank. The other, or east tank, was situate directly to the east of the west tank. The distance between these tanks is not given, but it is apparent from one of plaintiff's exhibits that it was about 10 feet.

**6**

(5) On March 15, defendant Pennington made arrangements with plaintiff to take a portable "hot oil unit" onto the lease for the purpose of treating oil in the west tank. This oil had not passed through the settler. The settler and the hot oil unit serve the same purpose, and that is the separation of the oil from the water, gas and other wastes in the oil by the use of heat.

(6) Plaintiff's operator did not reach the lease with the unit until just as it was getting dark.

(7) Plaintiff's operator was to treat the oil in the west tank. In locating the hot oil unit, which was mounted on a truck, he made an effort to so locate it that gas which might be coming from the two storage tanks would not likely be carried by any air movements toward the unit, and, thus, become ignited either by the fire in the fire box of the hot oil unit or by the exhaust from the motor of the truck on which it was mounted. In order to determine the direction and extent of any air movement, he tossed a handfull of dirt in the air and observed the movement of the dust therefrom. He concluded there was "just a light breeze" blowing from the northeast toward the southwest.

(8) The overall length of his unit was about 30 feet. He located it to the south of the east tank headed in a somewhat southeasterly direction. The front end of the truck so located was approximately 6 feet from the open end of the vent line which extended easterly from the settler. This open end of the vent line was a little east of the east tank, and was several feet south of that tank. The open end of the vent line was southeast of the front of the truck, and, as already stated, was about 6 feet distant from the front of the truck.

(9) The motor of the truck continued to run because it was the source of the power for the pump which was to circulate the oil from the west tank through the hot oil unit and back into the west tank.

(10) Plaintiff's operator placed hoses from the rear of the unit into the oil of the west tank and began the circulation of the oil through these hoses and through the unit. He went to the rear of the unit after pumping had commenced and checked his lines and connections for leaks. He found none. He then proceeded to an instrument panel situate on the left side of the unit and immediately to the rear of the cab of the truck. By the use of a button or switch on this panel, he started a small motor which was located immediately below the unit. This motor forced fuel under pressure into the fire box and powered a blower which drew air into the fire box. He lighted the fire in the fire box by use of another button or switch on the panel. The flame of the fire was kept low at first. Shortly thereafter he walked around the front of his truck to a point on the right side of the unit and immediately to the rear of the truck cab for the purpose of viewing the flame through a small window. He then returned to the instrument panel on the left side of the truck by again walking around the front of the truck. Upon reaching the instrument panel he turned the valve, which controlled the fuel in the fire box, so that it was on full force. By this time he had been at the site from 20 to 30 minutes.

(11) Almost immediately after turning the valve, he observed a fire break out at the settler. This fire moved rapidly and close to the ground from the settler in a northerly and slightly easterly direction, and within a matter of seconds reached the rear of the truck. From there it moved in a westerly and northerly direction to the wall of the west tank and up that wall.

(12) He promptly turned the valve so that the fire in the fire box of the hot oil unit was extinguished. He then started to get into the truck to move it, but apparently became frightened and ran to the east. He turned off the pump on the oil well which had been pumping oil into the separator. He then started walking toward town for help.

(13) Up to the time he left the site, there had been no fire toward the front of

.the truck and none in the area of the open end of the vent line. At the time he left there was fire only at the rear of the truck and around the hoses leading from the unit to the west tank, and on the west tank.

(14) About an hour later, when he returned with the plaintiff, the entire truck was burning, as was the gas coming from the vent on top of the west tank. Defendant Pennington also arrived at this time and he noticed a flame at the open end of the vent line. This flame was about 6 inches to a foot in length, and it went out of its own accord.

(15) There is no question some gas escaped from the open end of the vent line, because one of the purposes of the line was to carry gas from the settler. The quantity of this gas varied from time to time. However, there is no evidence as to the amount of such gas escaping therefrom at any time, and plaintiff's operator smelled no gas in twice passing within 3 or 4 feet of the end of the vent line within approximately a minute of the time of the fire. Although the odor of this gas was not strong, it was not odorless.

(16) The plaintiff and a witness for the defendants testified that a gas fire moves, or flashes back, from the point of ignition toward the source of the gas.

A reading of the entire transcript, and particularly the court's instructions, leaves no doubt that plaintiff was contending defendants were negligent in permitting gas to escape from the open end of this uncompleted vent line, and that this negligence was a proximate cause of the fire which resulted in the destruction of the truck and hot oil unit. Unless the evidence substantially supports a finding that gas from this source in some way reached the settler, where it was ignited, then there was a failure to establish a causal relationship between defendants' negligence and the fire which consumed plaintiff's property.

The pertinent portions of the court's instructions to the jury are as follows:

"INSTRUCTION NO. 5

"Negligence resulting from a violation of a governmental regulation is no different in effect from that resulting from other acts or omissions constituting negligence, and in each case the negligence is of no consequence unless it is a proximate cause of the damage found by you to have been suffered by the plaintiff.

\*     \*     \*     \*     \*     \*

"INSTRUCTION NO. 7

"The proximate cause of an injury is that which in a natural and continuous sequence (unbroken by any independent intervening cause) produces the injury, and without which the injury would not have occurred. (It need not be the only cause, nor the last nor nearest cause. It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury.)

\*     \*     \*     \*     \*     \*

"INSTRUCTION NO. 22

"The only allegations of negligence made by the plaintiff applicable to the defendants are:

"A. That the gas vent line extended only approximately 55 feet from the fire box of said heater-treater and permitted escaping gas to blow back upon and into said fire box causing the fire and resulting damage hereinafter mentioned.

"B. That said heater-treater was not vented in accordance with the rules and regulations of the New Mexico State Oil and Gas Conservation Commission as set forth elsewhere in these instructions.

"You are, therefore, instructed that unless you find from a preponderance of the evidence that the fire was proximately caused by gas from the vent line blowing back upon and into the fire box of the heater-treater, your verdict must be for the Defendants.

\*     \*     \*     \*     \*     \*

**8**

"INSTRUCTION NO. 26

"You are instructed that evidence may be either direct or circumstantial. Direct evidence is that which proves a fact in dispute directly and which, in itself, if true, conclusively establishes such fact.

"Circumstantial evidence is that which tends to establish a fact in dispute by proving another fact which, although true, does not itself conclusively establish the fact in dispute or the existence of such fact. An inference that the fact in dispute exists may be based only on other facts in evidence and can never be based on conjecture, speculation or other inferences.

"Circumstantial evidence which is equally consistent with each of several inconsistent facts does not establish any of such facts.

"Plaintiff has presented circumstantial evidence by which he seeks to establish that the fire that occurred in this case was proximately caused by the leakage of gas from a vent pipe which he claims was improperly constructed.

"If from all the evidence you find that the circumstances proved are equally consistent with the fire having been caused from oil on Plaintiff's truck or when vapor from one of the storage tanks on the premises ignited, then the evidence is insufficient to establish a proximate cause of the accident for which defendants could be liable, and you will bring in your verdict for defendants against Plaintiff and you will not assess damages."

\*　　\*　　\*　　\*　　\*　　\*

■ No objection was made to any of these instructions in the trial court, and no claim of error therein is asserted here. The statements contained in these instructions are the law of this case. American Telephone & Tel. Co. of Wyo. v. Walker, 77 N.M. 755, 427 P.2d 267 (1967); Griego v. Conwell, 54 N.M. 287, 222 P.2d 606 (1950); Pankey v. First Nat. Bank of Hot Springs, 40 N.M. 270, 58 P.2d 1186 (1936).

There is nothing in the court's other instructions which is inconsistent with or requires a modification of the statements contained in the quoted instructions, or which in any way limits the application of these statements to the facts. Thus, the question of adequacy of the evidence to support the necessary proximate causal relationship must be resolved in the light of these statements of the law.

■ Ordinarily, the issue of proximate cause is to be determined by the trier of the facts. Greenfield v. Bruskas, 41 N.M. 346, 68 P.2d 921 (1937). However, if the facts bearing upon the issue are not in dispute, and the reasonable inferences to be drawn from these facts are plain and consistent, then it becomes an issue of law. Chavira v. Carnahan, 77 N.M. 467, 423 P.2d 988 (1967); Greenfield v. Bruskas, supra.

The foregoing recited facts are not in dispute, and these facts will not support a reasonable inference that gas escaping from the vent line became ignited and caused the fire.

■ We know that the settler had been in operation for almost a week before the fire occurred. Although there is no direct evidence that gas was escaping from the vent line at or immediately prior to the time of the fire, it can reasonably be inferred that gas was escaping therefrom at that time. But this inference is not in itself sufficient to establish a causal connection between this gas and the fire.

Unquestionably, the direction of the "light breeze," which was from the northeast toward the southwest, would, unless the direction of that movement changed, tend to carry any gas escaping from the vent line to the east and south of the settler. Plaintiff contends that it can reasonably be inferred that this "light breeze," in passing around the two storage tanks and the unit, and particularly in passing around the front of the truck, created swirls or eddies of air which picked up gas escaping from the vent, carried it in a northwesterly direction toward the back of his truck, and

from there in an almost southerly direction to the fire in the settler. We disagree.

There was testimony that moving air, in passing around an object, does create swirls or eddies, and this is consistent with common knowledge concerning the course moving air takes upon striking a stationary object. However, we have no evidence as to the force of the air movement, other than the statement that it was a "light breeze"; we have no evidence as to the extent of any swirling or eddying of the air which may have been created by this light breeze in passing around the unit or the tanks; we have no evidence that any such swirling or eddying could have caused gas from the vent line to be carried or moved toward the back of the truck and then toward the settler; and we have no evidence as to the quantity of gas which may possibly have been affected by any such swirling or eddying, or that the gas could possibly have reached the settler in this manner in sufficient quantity to have been combustible.

To reach a finding that gas from the vent line moved in the direction suggested by plaintiff, and in a quantity sufficient to have caused the fire, requires nothing less than speculation, conjecture, or the piling of inference upon inference, which the jury was expressly instructed was improper. This instruction is clearly consistent with the law in this jurisdiction. Bolt v. Davis, 70 N.M. 449, 374 P.2d 648 (1962); Kitts v. Shop Rite Foods, 64 N.M. 24, 323 P.2d 282 (1958); DeBaca v. Kahn, 49 N.M. 225, 161 P.2d 630 (1945).

The testimony of plaintiff and of defendants' expert was that a gas fire moves, or flashes back, to the source of the gas. This testimony is undisputed and is consistent with experience concerning the burning of any highly flammable substance which is readily consumed by fire and which is coming from a particular source. Here, the fire moved from the settler to the rear of the truck, which was some 36 feet in a northwesterly direction from the open end of the vent line, and then, instead of moving toward the open end of the vent line, moved in the opposite direction toward the west tank and up the wall of that tank. It is true that about an hour later gas coming from the open vent line was burning, but by this time the entire truck and hot oil unit were burning, and the fire therefrom was then in the immediate vicinity of the open vent.

Plaintiff argues that under the court's instructions, and particularly under Instruction No. 7, the jury was only required to find that gas from this vent line was one of the causes of the fire. This is true, but it must have been such a cause that without it the fire, which in turn caused the damages, would not have occurred. There is not even the slightest suggestion that the source of the gas, which the flame consumed in its northwesterly movement from the rear of the truck to the west tank and up the wall of that tank, was the open end of the vent line in question. Thus, we know that gas from some source, other than the vent line, was reaching the rear end of the truck in combustible quantities.

It would be nothing less than speculation or conjecture to say that, at the rear of the truck, the gas from the west tank, or whatever may have been its source, combined with gas from the open vent line, and moved from there to the settler, where these combined gases were ignited, and that without the gas from the vent line there would have been no ignition of the gas and no fire.

The evidence is far more consistent with a finding that the fire was proximately caused by gas coming from the west storage tank, than that it was proximately caused by gas coming from the vent pipe in question. This being the case, the jury, under the court's Instruction No. 26, was bound to find the evidence "insufficient to establish a proximate cause of the accident for which defendants could be liable."

Under the law of this case, as set forth in the court's instructions, there was no way the jury could have found the negligence of the defendants was a proximate

cause of the fire and resulting damages. The trial court should have directed a verdict for the defendants, but, failing in this, it was then incumbent upon the court to enter judgment for the defendants notwithstanding the verdict.

In reaching this decision, we have not overlooked our duty to refrain from weighing the evidence, or from disturbing a verdict which is supported by substantial evidence and reasonable inferences deducible therefrom. There is no conflicting evidence, or reasonable inferences from the evidence, to weigh and none which gives any substantial support to a finding that gas from the open vent line was a proximate cause of the fire.

The judgment should be reversed and the cause remanded with instructions to set the judgment aside and enter judgment for defendants.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.