487 P.2d 187

Arnold G. PAVLOS and Catherine Pavlos, individually and as mother and next friend of Christina Pavlos, Plaintiffs and Counter-Defendants, Appellees,

v.

ALBUQUERQUE NATIONAL BANK, Executor of the Estates of Bernard Brint and Rebecca Brint; Defendant and Counter-Claimant, Appellant.

ALBUQUERQUE NATIONAL BANK, Administrator of the Estate of Claire Brint, Deceased, Plaintiff,

v.

Arnold G. PAVLOS, Defendant.

No. 612.

Court of Appeals of New Mexico.

June 18, 1971.

Eugene E. Klecan, James T. Roach, Julius M. Wollen, Albuquerque, for appellant.

Charles G. Berry, O. L. Puccini, Jr., McAtee, Marchiondo & Berry, Albuquerque, for appellees.

## OPINION

WOOD, Judge.

The appeal in this automobile accident case involves (1) the exclusion of non-expert opinion testimony; (2) a directed verdict against defendant on the issue of liability; and (3) a directed verdict against the non-driver co-owner of the car who was present in the car when the accident occurred. The appeal is from the judgment in favor of Catherine Pavlos.

The Pavlos vehicle was proceeding in a southerly direction within its lane of travel. The Brint vehicle was approaching the Pavlos vehicle from the south. The Brint vehicle was observed coming across the highway until it was approximately five feet in the lane of travel of the Pavlos car. This maneuver by the Brint car was in a normal manner; that is, not erratically. The Brint vehicle then moved back into its proper lane, again in what appeared to be in a normal manner. It then swerved diagonally across the highway.

The driver of the Pavlos car had observed the Brint car when it first crossed into the lane of travel of the Pavlos car. The driver of the Pavlos car started slowing his vehicle and moved to the right. The collision between the cars occurred at, or slightly west of, the western edge of the lane of travel for southbound vehicles. The point of impact on the Pavlos car was the left front, on the Brint car the point of impact was at the doorpost between the front and back doors on the right-hand side of the car.

The accident happened in daylight. The road was straight but "hilly." The road surface was dry. All witnesses who testified on the point said it was windy.

Mr. and Mrs. Brint died from injuries suffered in the collision. Mrs. Brint was driving. It was stipulated that Mr. and Mrs. Brint were the owners of the car.

*Exclusion of non-expert opinion testimony.*

Defendant attempted to present evidence, through the witness Teague, that wind conditions caused the Brint vehicle to swerve across the highway into the path of the Pavlos car. No attempt was made to qualify Teague as an expert on wind conditions or as to the effect of wind on the Brint car. His opinion was asked as a non-expert.

In presenting this issue, defendant argues that non-expert testimony may be received in certain instances. We agree. State v. Cooley, 19 N.M. 91, 140 P. 1111, 52 L.R.A.,N.S., 230 (1914) holds that where descriptive language is inadequate to convey the precise facts to the jury, or the bearing of the facts on the issue, the description of the witness must of necessity be allowed to be supplemented by his opinion. See also Skala v. N. Y. Life Ins. Co., 24 N.M. 78, 172 P. 1046 (1918). As stated in Padgett v. Buxton-Smith Mercantile Company, 262 F.2d 39 (10th Cir. 1958), cert. denied 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961): " * * * all non-expert opinion and impression evidence is competent

if it is necessary or appropriate to reproduce the witness' knowledge of the pertinent facts. * * *"

Some of the New Mexico decisions applying this non-expert opinion rule are: State v. Chavez, 77 N.M. 274, 421 P.2d 796 (1966) —experienced lay witness testified as to reaction of narcotics drug users; State v. Ortega, 77 N.M. 7, 419 P.2d 219 (1966)—insanity; State v. Deming, 66 N.M. 175, 344 P.2d 481, 77 A.L.R.2d 964 (1959), and Bunton v. Hull, 51 N.M. 5, 177 P.2d 168 (1947)—speed; Skala v. N. Y. Life Ins. Co., supra—despondent mood; State v. Cooley, supra—appearance of friendly relations.

The issue here is not whether, as a general proposition, non-expert opinion may be received; the issue is whether a sufficient basis was presented to permit receipt of the non-expert opinion.

Teague, driving south about one-fourth mile behind the Pavlos vehicle, was on a downhill slope and had a view of the area where the accident occurred. He saw some of the events which took place shortly before the collision and also saw the collision. He testified the wind was blowing "strong," that there were cuts "all along there" that "* * * would cause the wind to slack up its speed anywhere in there." He also testified that at the place where the accident occurred the road was not between hills or cliffs close to the road.

Teague testified he took the "* * * ordinary precaution you take with driving with the wind on your side. * * *" "* * * [T]here were dust devils all down through there." There was a dust devil "* * * coming in that area right about the time of the impact. * * *" The two cars were approaching and "* * * the northbound car was in its lane and the next moment I saw it there was an impact, * * * and dust right at that point of impact." Teague couldn't state the angle of the Brint car as he approached, but when he got to the accident scene the Brint car "* * * was straight across the road, * * * it was east and west."

After the above evidence was received, defendant tendered the following question and answer:

"Q. Mr. Teague, based upon what you observed there at the scene, and what you had experienced in the way of weather conditions and all other factors, and based upon your prior driving experience, do you have an opinion as to what caused the northbound car to go over into the southbound lane?

"A. All through that area there is these cuts, as I have described, and my opinion is as she was coming out of one of these cuts one of the gusts hit her car and caused her to swerve into that lane. That is my only conclusion. It was like an unavoidable accident as far as I am concerned."

The trial court correctly refused to permit this question and answer in evidence. In so holding we disregard the following: (1) the fact that we have no idea what was meant by "all other factors;" (2) the fact that the evidence of prior driving experience was only that Teague was familiar with the road, having "traveled" it several times; and (3) that the answer, "like an unavoidable accident" raises a question as to an inadmissible opinion on a matter of law. See Beal v. Southern Union Gas Co., 66 N.M. 424, 349 P.2d 337, 84 A.L.R.2d 1269 (1960).

■ We consider only that portion of the question concerning Teague's observations at the scene and his experience "in the way of weather conditions."

In each of the New Mexico cases cited above on the non-expert opinion rule, personal observation is a key factor in permitting the opinion. 7 Wigmore, Evidence § 1928, at 24 (3rd ed. 1940), in arguing for the non-expert opinion rule which New Mexico has adopted, bases his justification for the admission of such testimony on the personal observations of the witness.

An examination of Teague's testimony reveals that he never testified that he observed a cut near the accident scene, never said a dust devil was near the accident scene or the Brint car and never testified that he ob-

served the movement of the Brint car when it left its lane of travel and moved across the highway to the point of collision. His observations as to wind conditions at the scene simply are too general. His testimony is about "anywhere in there;" "all through there;" "in that area." The evidence is that the area of visibility was up to two miles for a car driving to the south. Teague's observation testimony about wind conditions is never applied to the Brint car near the accident scene.

Specifically, on the foundation laid at the time the question and answer was tendered, Teague's opinion was speculative. Such a speculative opinion was properly excluded. See Fitzgerald v. Fitzgerald, 70 N.M. 11, 369 P.2d 398 (1962); Adamson v. Highland Corporation, 80 N.M. 4, 450 P.2d 442 (Ct. App.1969). Compare Bunton v. Hull, supra.

The only evidence as to Teague's experience as to weather conditions, apart from that included in his "observation" testimony, is that he was observing the ordinary precaution taken in driving with the wind on your side. There is no evidence as to the effects of wind on the Brint car, nor evidence of wind conditions in the vicinity of that car. Nor is there evidence as to Teague's experience with wind conditions similar to the conditions he observed immediately prior to the accident. Compare the testimony as to the plaintiff's observations of the effects of wind in Wood v. Michigan Millers Mutual Fire Insurance Co., 243 N.C. 158, 90 S.E.2d 310 (1955). Teague's "ordinary precaution" testimony is not a basis for an opinion as to the effects of wind on the Brint car because there is no testimony as to the effect of wind either on the Brint car or cars generally. Specifically, there is no testimony concerning "experience." Compare State v. Chavez, supra.

■. The trial court did not err in refusing the tendered question and answer. After this ruling, defendant then retendered a question to a state policeman concerning signs warning of gusty winds. The objection to this question was properly sustained because the question was too broadly framed. The accident happened 20 miles south of Socorro. The question was directed to signs twenty-five miles in either direction from the accident scene, and then changed to ask about signs from Socorro on the north to Truth or Consequences on the south, a distance of approximately 72 miles. With the question directed to such distances, the trial court could, in its discretion, properly refuse to permit the question absent some showing as to the relevancy of signs at those distances. Compare In re Williams' Will, 71 N.M. 39, 376 P.2d 3 (1962). Here, there is no showing of the relevancy of signs so far removed from the accident scene, and, thus, nothing on which to base a claim that the trial court abused its discretion in refusing to permit the question to be asked.

Next, defendant tendered questions to and answers of the witness Teague. A question was directed to signs "north" of the accident indicating strong winds ahead. The answer was that there " * * * are warning signs all through that area, from there on south. * * *" The next question was directed to Teague's personal knowledge and experience of " * * * strong winds in that area on frequent occasions." The answer was "[o]n frequent occasions there are. * * *"

The first question has the defect of remoteness discussed in connection with the question to the state policeman. The second question, and both answers, referring to "that area," have the defect of speculation discussed in connection with the foundation testimony in the effort to permit Teague to express his opinion. Without further showing, we cannot say the trial court erred in refusing the tender of these questions and answers. This same result, that the tendered testimony was inadmissible because speculative, also applies to the effort of defendant to introduce Teague's opinion on redirect examination.

*Directed verdict as to liability.*

At the close of all the evidence, the trial court directed a verdict against defendant

on the issue of liability. Defendant asserts: "The trial court was in error because it is not negligence as a matter of law to be in the left-hand lane. It is only negligence as a matter of law to be driving or traveling in the left-hand lane of traffic, not to be present in the left-hand lane of traffic at the time of the accident. * * *" Defendant argues this point on both the presence and absence of evidence and the presumption of due care of a decedent.

■ In answering defendant's claim, we start with Paddock v. Schuelke, 81 N.M. 759, 473 P.2d 373 (Ct.App.1970). Under that case the burden was on defendant to explain the presence of the Brint car on the wrong side of the road at the instant of the collision.

■ Defendant asserts there are inferences from the evidence, sufficient to raise a fact issue for the jury, which explain that the Brint car was blown sideways across the road. He relies on the Teague testimony reviewed under the first issue in this opinion, and subsequent testimony of Teague that there was "a terrific wind right in there." Defendant's reliance on this testimony is predicated on his assumption that Teague testified " * * * [o]ne of the dust devils was at the place of the impact at the time of the accident." Teague did not so testify. His reference to strong wind is in an unspecified area up to two miles. His reference to dust devils was "in that area;" his cross-examination makes clear that he "saw the dust fly" at or near the accident scene only when the cars collided. Eliminating defendant's misconception, Teague's testimony does not support an inference that the Brint car was blown across the road. There is no evidence that wind "in the area" existed near the accident scene or was in any way involved in the events resulting in the collision. All we have is speculation which does not support an inference. Bolt v. Davis, 70 N.M. 449, 374 P.2d 648 (1962).

■ Defendant's argument concerning an absence of evidence is based on § 64-18–8, N.M.S.A.1953 (Repl. Vol. 9, pt. 2). With exceptions not involved here, § 64-18–8, supra, provides that vehicles are to be driven on the right-half of the roadway. Although there is evidence that the Brint car was on the wrong side of the road at the moment of the collision, defendant asserts there is no evidence that Mrs. Brint drove it there. In support of this contention, defendant relies on White v. Montoya, 46 N.M. 241, 126 P.2d 471 (1942), and the evidence that the Brint car "swerved severely" across the highway to the point of collision.

In White v. Montoya, supra, the motorcyclist who recovered judgment was apparently on the wrong side of the street when the collision occurred. However, there were inferences from the evidence explaining why the cyclist was across the center line. With this explanation the New Mexico Supreme Court stated it was immaterial that the impact occurred across the center line of the street and " * * * [i]t does not follow that he had been travelling on the left side of the street."

White v. Montoya, supra, does not require a holding that the directed verdict of liability was improper because here there was evidence of driving or traveling on the wrong side of the road. This evidence involves more than the selected portion on which defendant relies—the severe swerve. The evidence is that the Brint car crossed over the centerline into the southbound lane in a normal manner, returned to the northbound lane in the same manner, then crossed again into the southbound lane " * * * at a slight diagonal, slight angle. * * *" The uninterrupted skid marks of the Brint vehicle verify this description; the skid marks start in the southbound lane, return to the northbound lane and then on a curve return to the southbound lane up to the impact point. This is evidence that Mrs. Brint was driving or traveling on the wrong side of the road. This evidence invoked the rule applied in Paddock v. Schuelke, supra—the

burden was on defendant to explain the presence of the Brint car on the wrong side of the road. Since there was no explanation, the directed verdict of liability was proper. Paddock v. Schuelke, supra.

Defendant also argues that there was a presumption of due care on the part of Mrs. Brint. It recognizes that Hartford Fire Insurance Company v. Horne, 65 N.M. 440, 338 P.2d 1067 (1959) states:

"* * * the presumption operates to protect or shield a person in whose favor it is invoked until credible and substantial evidence which would support a finding is introduced to the contrary, and that it then vanishes as though it had never existed. * * *"

Compare Payne v. Tuozzoli, 80 N.M. 214, 453 P.2d 384 (Ct.App.1969).

Defendant claims the presumption of due care remained in the case, and was sufficient to prevent a directed verdict of liability, because "* * * there is no evidence of a lack of due care on the part of the decedents prior to the time of the accident. * * *" We disagree. The evidence of the path the Brint car traveled— from the wrong side of the road, back to the right side, and then across to the wrong side again—is evidence of lack of due care. With this evidence, the presumption of due care had vanished.

The trial court did not err in directing a verdict on the question of liability.

*Directed verdict against the non-driver co-owner who was present.*

Although the trial court proceeded properly in directing a verdict of liability against the estate of Mrs. Brint, should a verdict have been directed against the estate of Mr. Brint? Mr. Brint was not the driver. There is no evidence of negligence on his part.

The trial court directed the verdict against the estate of Mr. Brint on the basis that the wife's negligence "* * * was also imputed to her husband who was a co-owner of the motor vehicle and was riding beside her in the car."

The fact that the Brints were husband and wife is not, in itself, a basis for imputing the wife's negligence to the husband. "* * * In order to impute the negligence of one person to another, a relation of master or superior and servant or subordinate must exist between them. * * *" Bailey v. Jeffries-Eaves, Inc., 76 N.M. 278, 414 P.2d 503 (1966). Here, there is no evidence of a master-servant or principal-agent relationship between the spouses. Compare Holloway v. Evans, 55 N.M. 601, 238 P.2d 457 (1951). "* * * No presumption arises from the mere fact of the marital relationship that the husband or wife is acting as the agent of the other * * *" Rushing v. Polk, 258 N.C. 256, 128 S.E.2d 675 (1962). Compare Trefzer v. Stiles, 56 N.M. 296, 243 P.2d 605 (1952); McDonald v. Senn, 53 N.M. 198, 204 P.2d 990, 10 A.L.R.2d 966 (1949); § 21–6–6, N.M.S.A.1953 (Repl. Vol. 4).

It was stipulated that "* * * Mr. and Mrs. Brint were owners of the automobile, * * *" The nature of this co-ownership was not identified—we do not know whether it was community property, joint tenancy or tenancy in common. Section 57–3–2, N.M.S.A.1953 (Repl. Vol. 8, pt. 2).

Parker v. McCartney, 216 Or. 283, 338 P.2d 371 (1959) states:

"* * * [C]o-ownership itself refutes agency. * * * Co-ownership is actually the antithesis of an employer-employe or principal and agent relationship. * * *"

See also Sherman v. Korff, 353 Mich. 387, 91 N.W.2d 485 (1958). There was no basis for imputing the wife's negligence to the husband on the basis of a joint tenancy or a tenancy in common.

Nor is there any such basis because the co-ownership may have been community property. 1 de Funiak, Principles of Community Property § 181 (1943) reviews principles of community property law and states:

"* * * [S]he [the wife] could be held responsible for her own wrongful

acts and compensation recovered therefor from her own property or property interests. No property of the husband, either his separate property or his share of the community property could be made liable for the wife's delict."

In 1 de Funiak, supra, § 182, it is stated:

"The doctrine of *respondeat superior* has sometimes been invoked in an effort to fix liability on the husband for the tortious act of the wife, usually in cases where the tortious act results from the wife's driving of the family automobile or the husband's automobile by his authorization. * * * It should be apparent, under the principle of the community property system that each spouse is a separate person in his or her own right, that the wife is acting as an individual in driving the automobile just as much as the husband would be in driving it. He should no more be liable for her tort than she should be for his. * * * Even if the husband has requested or ordered her to proceed to do a certain thing, in the course of which she commits a tortious act, their relation is not one of master and servant. * * *"

▇▇▇ The third element in the trial court's ruling is the presence of the husband in the car. Where a non-owner is driving, and the owner is present in the car, a presumption exists that the driver is the agent of the owner. State Farm Mut. Auto. Ins. Co. v. Foundation R. Ins. Co., 78 N.M. 359, 431 P.2d 737 (1967). See Payne v. Tuozzoli, supra. This presumption is based on the theory that the owner, present in the car, has the right to control the driver. See Annot., 50 A.L.R.2d 1281 (1956). No such theory is applicable where one co-owner is driving and the other co-owner is a passenger. It is inapplicable because the co-owners are equal in status and ownership; the co-ownership refutes agency. Parker v. McCartney, supra. Since, as between co-owners, presence is an insufficient basis for a presumption of agency, we do not reach the reality of a "right to control" a car speeding down the highway. See Parker v. McCartney, supra; Sherman v. Korff, supra.

Neither the marital relationship, the co-ownership of the car, nor the presence of a co-owner passenger when another co-owner is driving, considered individually, raises a presumption that the wife driver was an agent of the husband passenger. Nor did these items, considered collectively, raise such a presumption. Compare Valencia v. Strayer, 73 N.M. 252, 387 P.2d 456 (1963). On the grounds stated in the trial court's ruling, the directed verdict against the estate of Mr. Brint was erroneous.

▇▇▇ It is asserted, however, that the trial court reached the correct result because of the family purpose doctrine. While that doctrine was argued to the trial court, there was no basis in the evidence for applying this doctrine. The basis of the family purpose doctrine, as applied to automobiles, is that the car involved is maintained by its owner for the general use and convenience of his or her family. Boes v. Howell, 24 N.M. 142, 173 P. 966, L.R.A.1918F, 288 (1918); N.M.U.J.I. 4.9. There is no evidence that the Brint car was so used; all we know is that Mr. and Mrs. Brint, and their daughter, were occupants of the car when the accident occurred.

Two additional arguments are presented in the appeal in support of the directed verdict. One is the joint venture or common purpose theory. Silva v. Waldie, 42 N.M. 514, 82 P.2d 282 (1938); Knudson v. Boren, 261 F.2d 15 (10th Cir. 1958). There is no direct evidence in this case of a joint prosecution or of a common purpose. It is doubtful that a common purpose could be inferred here when we have no more evidence than the presence of the Brints and their daughter in the car. Compare 2 Restatement, Torts § 491, comment (f) (1934) with 2 Restatement, Torts 2d § 491, comment (h) (1965).

The other argument is based on § 57-4-3, N.M.S.A.1953 (Repl. Vol. 8, pt. 2). This statute places in the husband " * * * the management and control of the person-

al property of the community, * * *" Plaintiff would have us hold, under the community property presumption as to the nature of the co-ownership, and under § 57–4–3, supra, that the wife was driving the car as the agent of the manager of the community. It is doubtful that this theory is valid. See 1 de Funiak, supra, § 182.

■ The applicability of the two theories is not before us for decision. Heretofore we have discussed the matters presented to the trial court for decision. Apart from the matters presented to the trial court, we know plaintiff's theory concerning the Brint car from the amended complaint and a proposed trial amendment to the pleadings. Neither the trial court's ruling, the matters presented to the trial court in argument, nor plaintiff's pleadings presented the question of a joint venture or common purpose apart from the family purpose doctrine or the question of agency based on the husband's management and control of community property. Plaintiff, in asking us to consider these two arguments, seeks to change her theory of the case on appeal. She may not do so. Board of Education, etc. v. State Board of Education, 79 N.M. 332, 443 P.2d 502 (Ct.App. 1968). See New Mexico Digest, Appeal and Error, ⊜—171(1) for numerous decisions on this point.

The directed verdict against the estate of Mr. Brint cannot be sustained either on grounds stated in the trial court's rulings or on grounds presented to the trial court. The directed verdict must be reversed.

There remains for consideration the question of whether a directed verdict should have been granted in favor of the estate of Mr. Brint. Defendant so moved, and this motion was before the trial court when the erroneous verdict was directed. Defendant's motion was that there was no evidence of negligence on the part of Mr. Brint and that there were no inferences in the case sufficient for the jury to impute Mrs. Brint's negligence to Mr. Brint. Defendant's motion should have been granted. There is no evidence that Mr. Brint was negligent. As previously discussed herein, there was no basis for imputing the negligence of Mrs. Brint on any of the theories presented to the trial court.

The judgment against defendant as the executor of the estate of Rebecca Brint is affirmed. The judgment against defendant as the executor of the estate of Bernard Brint is reversed. The cause is remanded with instructions to vacate the present judgment insofar as it applies to Catherine Pavlos, and enter a new judgment against defendant as executor of the estate of Rebecca Brint and in favor of defendant as executor of the estate of Bernard Brint.

It is so ordered.

SPIESS, C. J., concurs.

SUTIN, Judge (dissenting).

I concur that negligence of Mrs. Brint cannot be imputed to Mr. Brint. I dissent on the point that the trial court correctly entered a directed verdict on the question of liability of the estate of Mrs. Brint. The reasons are, (1) that Teague's nonexpert opinions should have been admitted in evidence, and (2) the evidence was sufficient to create an issue of fact of Mrs. Brint's negligence.

Directed verdicts, like summary judgments, must be cautiously and sparingly used. "Where the burden is upon the moving party and he seeks to sustain it by the testimony of witnesses, a directed verdict will seldom be granted." McMullen v. Ursuline Order of Sisters, 56 N.M. 570, 246 P.2d 1052, 1056 (1952).

Was there an issue of fact on the question of Mrs. Brint's liability?

The Brints died. The two witnesses who contributed to the issue were Pavlos and Teague. They both saw the accident.

The most favorable testimony and reasonable inferences in their strongest light which favor Mrs. Brint, including opinions of Mr. Teague which were not admitted, are as follows:

Mrs. Brint was 60 or 61 years of age, a normal person in reasonably good health.

She was driving her husband and retarded child northward toward Socorro. There was a clear view on this straight highway, and each operator could see vehicles travelling on either lane. At the time and place of the accident, the wind was blowing strong and terrific, and created dust devils. Right about the time of impact, there was a dust devil. Mrs. Brint's car came out of one of the cuts in the hills and one of the gusts of wind hit her car. When she was 75 or 50 feet in front of Pavlos' car in the opposite lane, the dust devil caused Mrs. Brint to swerve severely to the left into and across the wrong lane directly in the path of Pavlos. The wind was blowing strong all the way in through there, and anybody could have lost control of a car. It was all like an unavoidable accident.

There is no testimony that Mrs. Brint willfully, wantonly, recklessly, deliberately or inadvertently made a severe swerve from the right-hand side of her lane to the left across the wrong lane directly in front of Pavlos' automobile to cause three deaths in her car.

A "dust devil" appears to be a matter of common knowledge in the southwest. It is a product of hot and dry desert country. The Random House Dictionary of the English Language defines "dust devil" as follows:

"[A] small whirlwind 10–100 feet in diameter and from several hundred to 1000 feet high, common in dry regions on hot, calm afternoons and made visible by the dust, debris and sand it picks up from the ground."

A "whirlwind" is defined as:

"1. any of several small masses of air rotating rapidly around a more or less vertical axis and advancing simultaneously over land and sea, as a dust devil, tornado or waterspout.

"2. anything resembling a whirlwind, as in violent action, destructive force, etc."

The term "dust devil" should be construed in its popular sense as referring to any character of a windstorm, distinguished by its concentrated force and violence, so resistless as to make it especially destructive in its narrow pathway; as a small whirlwind or a violent and destructive windstorm.

When Teague was asked what his observation was about the location of the dust devil, he said: "At that time I would say there was one coming in that area *right about the time of the impact.*" [Emphasis added.] When he offered testimony that " * * * one of the gusts hit her car and caused her to swerve * * *", a reasonable inference is that he meant the "dust devil."

The lay opinions of Teague were admissible in evidence. He was a school teacher, impartial, and actuated by a desire to tell the truth. He was not a hired and generally biased expert. The " 'ordinary witness is permitted to sum up the total remembered and unremembered impressions of the senses by stating the opinion which they produced. To allow less may deprive a party of important and valuable evidence that can be got at in no other way.' " Territory v. McNabb, 16 N.M. 625, 636, 120 P. 907, 910 (1911). Without Teague's opinion, the jury would not be able to form an intelligent decision on the fact that her car suddenly swerved to the left. The rule is settled that " 'Where mere descriptive language is inadequate to convey to the jury the precise facts or their bearing on the issue, the description by the witness must of necessity be allowed to be supplemented by his opinion in order to put the jury in position to make the final decision of the fact' * * *." State v. Cooley, 19 N.M. 91, 109–10, 140 P. 1111, 1117, 52 L.R.A.,N.S., 230 (1914); Skala v. New York Life Ins. Co., 24 N.M. 78, 83, 172 P. 1046 (1918). See § 21–1–1(43) (a), N.M. S.A.1953 (Repl. Vol. 4).

It is wise to remember that the trend in American jurisprudence is toward the greater admissibility of evidence. We must

not "close any reasonable avenues to the truth in the investigation of questions of fact. In doubtful cases the doubt should be resolved in favor of its admissibility." Brown v. General Insurance Company of America, 70 N.M. 46, 53, 54, 369 P.2d 968, 973 (1962); Lopez v. Heesen, 69 N.M. 206, 214, 365 P.2d 448 (1961). Even though a broad discretion is allowed the trial court in passing on the admissibility of evidence, its discretion is not absolute and may not be exercised so as to impede either party in adequately presenting his case. The trial court failed to distinguish between the admissibility of Teague's evidence and the weight or credibility attached thereto. City of Santa Fe v. Gonzales, 80 N.M. 401, 456 P.2d 875 (1969).

When Teague judged that the impact was "like an unavoidable accident * *", he was speaking in layman's language not in legal language. He was not giving an opinion on a matter of law, but on a matter of ultimate fact. By "unavoidable accident," Teague probably meant he did not see Mrs. Brint or Pavlos do anything wrong. See Ferguson v. Hale, 66 N.M. 190, 344 P.2d 703 (1959); Beal v. Southern Union Gas Co., 66 N.M. 424, 349 P.2d 337, 84 A.L.R.2d 1269 (1960). His testimony was not speculation or conjecture in the sense of "guess." "Speculation" is the act of theorizing about a matter as to which evidence is not sufficient for certain knowledge. LeGrand v. U-Drive-It Co., 247 S.W.2d 706, 712 (Mo.1952). Teague saw both the vehicles. He relied on facts such as the dust devil hitting the Brint car, climatic conditions, the movement of the vehicles, the topography. These facts and inferences do not make his opinions inherently improbable, but, if some doubt should exist, the determination is for the jury, not the courts. The jury weighs the evidence and determines the credibility of witnesses, not the courts. Teague did not theorize.

A rule has developed in New Mexico called "The Burden of Explanation." What it means is, that when the undisputed evidence puts the operation of defendant's vehicle in the wrong lane, the defendant has the burden of going forward with the evidence to explain in order to avoid negligence per se.

The rule began with Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671 (1952). The court said the defendant had a duty to explain her presence on the wrong side of the road without her negligence. Frei relied on Purdie v. Brunswick, 20 Wash.2d 292, 146 P.2d 809 (1944). That case speaks in terms of "travelling" on the wrong side, not severely swerving across the wrong lane. Perhaps, under normal circumstancets, travelling or swerving both constitute statutory or common law negligence per se. Both can be excused if the party on the wrong side goes forward with the evidence to explain why the event occurred.

In Martinez v. Scott, 70 N.M. 354, 374 P.2d 117 (1962), the court said:

"* * * [T]here is a total absence of proof or permissible inference * * * to excuse or explain the presence of decedent's car in the wrong lane."

In Paddock v. Schuelke, 81 N.M. 759, 473 P.2d 393 (Ct.App.1970), the court said, "* * * there is no explanation." Hartford Fire Insurance Co. v. Horne, 65 N.M. 440, 338 P.2d 1067 (1959), appears to hold that the decedent travelling on the wrong side is negligent as a matter of law when there is "no evidence tending to explain" a violation of statutes. State v. Rice, 58 N.M. 205, 269 P.2d 751 (1954), seems to say that the evidence must show that a party is travelling or driving in the wrong lane without explanation.

What is sufficient to avoid a directed verdict? How much proof or permissible inference is necessary to excuse or explain the presence of Brint's car in the wrong lane? If the evidence or inference appears, if an explanation is made, does this mean Mrs. Brint was not negligent as a matter of law, or does it mean it created an issue of fact for the jury? To me, it should create an issue of fact under all of

the facts, circumstances, inferences and presumptions of the case.

The Supreme Court has held that where a driver is confronted with a sudden emergency, it is a sufficient explanation for leaving his lane of travel. Burkhart v. Corn, 59 N.M. 343, 284 P.2d 226 (1955). Under this circumstance, it follows that the driver had not been travelling on the left side. White v. Montoya, 46 N.M. 241, 126 P.2d 471 (1942), so that where the driver suddenly turns into the wrong lane, negligence and proximate cause are questions for the trier of the facts in the light of all the facts, circumstances and presumptions presented by the evidence. McDonald v. Linick, 58 N.M. 65, 265 P.2d 676 (1954). See Martin v. Gomez, 69 N.M. 1, 363 P.2d 365 (1961).

From all of the foregoing, I conclude:

1. The lay opinions of Teague were admissible in evidence.

2. Mrs. Brint was not "travelling" on the wrong side of the road. The presumption of due care operates to protect her because there is no credible and substantial evidence which would support a finding to the contrary. We cannot read Mrs. Brint's mind, nor define her control of the car so as to declare her negligent as a matter of law. Negligence and causation are questions of fact for the jury in the light of all the facts, circumstances, inferences and presumptions presented by the evidence.

3. If the "burden of explanation" doctrine applies, there is evidence and reasonable inferences which tend to explain or excuse the presence of her car in the wrong lane. The issue of reasonable care under the circumstances is a question of fact for the jury. The jury had the right to believe or disbelieve Teague and the right to find Mrs. Brint negligent or free of negligence.

The trial court erred in disallowing Teague's opinion testimony, in declaring Mrs. Brint negligent as a matter of law, and in directing a verdict for plaintiffs on the question of liability.

For these reasons, I dissent.